Jones *v.* Norwich and New York Transportation Company.

The only purpose of the present action was to restrain the defendants from doing a threatened or anticipated act alleged to be injurious to the plaintiff. The plaintiff did not claim to recover damages, nor ask for relief either by reason of acts done or omitted, but sought to prevent certain official action contemplated by the defendants. Such a case is not within the statute. This was the ground on which Justice INGRAHAM disposed of the question at special term, (33 *How. Pr.* 3,) and I fully concur in it.

2. I think the statute, when adopted, applied exclusively to actions and proceedings in courts of law, and not to suits in chancery, and consequently it is not now applicable to actions of purely equitable cognizance.

I am in favor of affirming the order.

Order affirmed.

[NEW YORK GENERAL TERM, October 12, 1867. *Leonard, Fullerton* and *J. C. Smith,* Justices.]

———————◇———————

MELINDA JONES *vs.* THE NORWICH AND NEW YORK TRANSPORTATION COMPANY.

Where a traveler by steamboat neglects to present his check and claim his baggage within a reasonable time after the arrival of the boat at the end of the route, the carrier becomes a mere gratuitous bailee; and if the baggage is afterwards destroyed by fire, without any negligence on his part, he is not liable for the value.

Where a traveler by steamboat, on reaching the end of one of the stages of her journey, not wishing to be troubled with her trunk, intentionally abandoned it to the care of the carrier, without any inquiry about it, or presentation of her check, or explanation, special arrangement or notice, for about 17 hours, while she left the boat and went about three miles to visit a friend; and during that period the trunk, with its contents was accidentally, and without negligence on the part of the carrier, destroyed by fire in a baggage room on the dock, into which it had been removed by the carrier's employees; *Held,* that the carrier was not liable for the value of the trunk and its contents.

VOL. L. 13

Jones *v.* Norwich and New York Transportation Company.

*Held, also,* that the statute of Connecticut prohibiting the doing of any secular work, or traveling, on the Lord's day, did not vary or affect the question of the carrier's liability; and that it furnished no excuse for the traveler's leaving her trunk in the manner she did, on Sunday morning, without any special arrangement for its keeping, until her return on Monday, and without notice to the captain, baggage master, or other employee of the carrier.

The undertaking of a carrier of passengers is that he will carry the passenger and his trunk to the place of destination, and deliver the same, with its contents, to him there, on presentation of his check for it, within a reasonable time, under the circumstances, after arriving.

The question whether the court has jurisdiction of the *case*, or cause of action, assuming that the defendant was either properly served with summons or process, or voluntarily appeared, can be raised by the defendant for the first time, on appeal.

An action brought by a passenger from New York to New London, against a foreign corporation doing business as a carrier of passengers, to recover the value of lost baggage, is an action on contract; and, so regarded, it is an action for damages arising upon a contract made within this state, and is within the provisions of the act of March 15, 1849, giving to the Supreme Court jurisdiction in such a case; and that act being still in force, this court has jurisdiction of the plaintiff's cause of action.

If the revised Code of 1849, took effect from its passage, or 20 days thereafter, that provision of the act of March 15, 1849, is not inconsistent with section 427, of the revised Code of 1849, and therefore not impliedly abolished by it, nor expressly abolished by sections 468 or 471 of the same Code.

Upon the theory that those sections took effect from the passage of the revised Code, or 20 days thereafter, section 471 should be regarded not as limiting the jurisdiction of the courts mentioned in it, to the cases specified therein, but as extending such jurisdiction to certain cases other than those mentioned in the act of March 15, 1849, leaving this act, so far as it confers jurisdiction on the Supreme Court, in full force and effect.

As to the Supreme Court, section 427 of the revised Code of 1849, should be presumed to have been adopted in view of the act of March 15, 1849, and ought not to be regarded as inconsistent with it.

THIS is an appeal by the defendants from a judgment entered on the report of a referee. The action was brought to recover the value of a trunk and contents, the personal baggage of the plaintiff. The referee reported in favor of the plaintiff for $1498.35; and judgment was entered for that sum, with costs, and an allowance for per centange. The facts are sufficiently stated in the opinion of the court.

*S. P. Nash*, for the appellants.    I. In the absence of any special agreement on the subject, the rule in this state is, that a common carrier of passengers and their baggage is liable for the latter until its safe arrival and delivery at the place of destination, and that passengers must demand and receive the same within a reasonable time after such arrival; if not, the liability of the carrier, as such, ceases, and the only liability thereafter is that of bailee, being responsible only for the want of ordinary care. (*Powell* v. *Meyers*, 26 *Wend.* 591. *Cary* v. *Cleveland R. R. Co.*, 29 *Barb.* 35.)

II. In this case, the defendants had fully performed their duty in respect to the plaintiff's baggage.    They had transported it safely to New London, the place of destination, and were ready to deliver it upon presentation of the check which had been given therefor, and it was lawful and proper for them to deliver, and for her to receive the same, even on Sunday morning. (*Powhattan S. B. Co.* v. *Appomattox R. R. Co.*, 24 *How. U. S.* 247.   *Merritt* v. *Earle*, 31 *Barb.* 38.   *Roth* v. *Buffalo and State Line R. R. Co.*, 34 *N. Y. Rep.* 548.)

III. But the plaintiff did not discharge her duty in respect to the delivery.    She had had a reasonable time to demand and receive her trunk after the arrival of the boat, and before it was placed in the baggage room, but neglected to do so.    1. What was a reasonable time for such purpose depends upon a proper consideration of all the facts and circumstances of the case.    There is no fixed rule upon the subject.    What may be a reasonable time in one case may not be so in another, and therefore each particular case must be determined by its own peculiar facts and circumstances. (*See the cases above cited, and also Chitty on Contracts; p.* 730.)    2. The testimony shows, that the boat arrived at New London at half past 12 o'clock ; that the plaintiff remained in her state room long after all the other passengers had taken their baggage and left, and that it was about nine o'clock when she left, at which time there was no crowd.   Every

thing was quiet and orderly, and she might with safety and perfect propriety have called for and received her baggage. Moreover, she had then and there in attendance her friend's coachman, who had been sent down to the boat with a wagon to carry her and her baggage to his house. If she had handed her check to the coachman, she might have easily and readily obtained her baggage and carried it away. Why did she not do so ? Because, as she says in her testimony, she intended to go on to Boston the next day, and did not want to be troubled with it in the mean time. It was not, therefore, because she had not reasonable time or sufficient opportunity to demand and receive it that it was left, but it was entirely for her own personal convenience. The referee has found that she had had a reasonable and sufficient time to receive her trunk, if it had been on a week day morning, but as it was on a Sunday morning it was not sufficient. This is an error. If the time was sufficient for one day it was for the other. 3. This question of reasonable time is not affected by any Sunday laws. The law of Connecticut, in regard to the proper observance of the Sabbath, provides that no person shall do any secular business, &c. nor travel, &c. on the Lord's day, between the rising of the sun and the setting of the same. (*Conn. Laws,* 1854, *p.* 769.) The defendants had discharged their entire duty before sunrise (4.50 A. M.) except the mere delivery of the baggage to the plaintiff, and she had had sufficient time to have demanded and received the same after daylight and before sunrise. But it was not a violation of this law for the plaintiff to go to her friend's house at nine or ten o'clock in the morning. (which was traveling long after sunrise,) nor would it have been any more so, if she had taken her baggage with her. It was no more a violation of the Sunday laws for the plaintiff to take her trunk than for the defendants to take charge of it. Besides, the testimony shows that this law, so far at least as it applied to passengers arriving on Sunday mornings by the boat, was not enforced. Such passengers might rise when they pleased, and hire a hack to carry

Jones *v.* Norwich and New York Transportation Company.

them and their baggage wherever they desired to go. There were more hackmen around the boat looking for custom on Sunday mornings than upon other days. This law, therefore, furnished no excuse for her not taking her baggage. 4. Nor can the plaintiff pretend to have had any religious scruples as to the proper observance of the Sabbath which prevented her from traveling. She took passage at New York, knowing that the boat would arrive at New London on Sunday morning, and at the same time intending to visit her friend who resided out of New London some three or four miles distant from the steamboat landing, and to see about a house which her daughter talked of hiring, being secular business and pleasure combined.

IV. The plaintiff, having failed to demand and receive her baggage within a reasonable time, the defendants were entitled, by usage, and under the circumstances, to make delivery thereof, by placing it, as they did, in the baggage room, subject to her order, and so discharge their liability as carriers. This was, and had been for a long time, the usual and customary mode of delivering baggage which remained on board, uncalled for, after a reasonable time; and the plaintiff must be presumed to have known of such a custom. It was a proper delivery. And, in a case recently decided in the United States Circuit Court, Chief Justice Chase held, that after the voyage is ended, the boat owners are not responsible for the baggage of passengers, unless there is a special contract made. If the passenger leaves the boat at his journey's end, and does not take his baggage, he leaves it at his own risk. (*See opinion of Chief Justice Chase, in Weems* v. *Pyfer.*) No notice to the plaintiff of the intention so to deliver was necessary; besides, notice could not have been given, as it was not known to whom the trunk belonged, or where its owner could be found. (*Fisk* v. *Newton*, 1 *Denio*, 45. *Gibson* v. *Culver*, 17 *Wend*. 305.)

V. Therefore, the trunk was not in the defendants' possession as carriers, but as bailees, liable for the ordinary care

thereof at the time it was consumed ; and, as there is no evidence of any want of proper care, they are entitled to judgment in their favor.

VI. If, as is insisted upon by the plaintiff's counsel, the room in the depot in which the trunk was placed was a part and parcel of the boat, and the trunk and its contents must be considered as on board the boat at the time it was consumed ; then, very clearly, the defendants are not liable for the loss, being expressly exempted by the act of congress, by which it is provided, that no owner or owners of any ship or vessel shall be subject or liable to answer for, or make good, to any one or more person or persons, any loss or damage which may happen to any goods or merchandise whatsoever, which shall be shipped, taken in or put on board any ship or vessel, by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners. (*Brightley's Digest of Laws of U. S. from* 1780 *to* 1857, *page* 834, § 49.)

VII. The plaintiff was a non-resident. The defendants are a foreign corporation. The loss of the trunk happened in Connecticut, and there the cause of action arose. The courts of this state have no jurisdiction of the action. (*Code*, § 427. *Harriott* v. *The New Jersey R. R. Co.*, 2 *Hilt.* 262. *Burckle* v. *Eckhart*, 3 *Comst.* 132,)

*John Fitch*, for the respondent. I. The defendants are common carriers, doing business half of the time in New York, all the time knowing the usage, customs and law of common carriers, and must be bound by them. They cannot limit their liability, or evade the consequences of a breach of trust or legal duties, unless by special agreement between the parties. (2 *Hill*, 62, 63. 1 *Kern.* 490. 6 *Seld.* 10 *N. Y. Rep.* 431. 21 *Wend.* 361. 17 *id.* 305. 19 *id.* 234, 251.) When baggage is received by the company, or its agents, their liability as common carriers attach, and

the company remains liable until a full and unequivocal re-delivery to the owner. (*Redfield on Railways*, 244. 26 *Wend.* 591. 21 *id.* 361. 17 *id.* 305. 1 *Denio*, 45, 47. 3 *Comst.* 322. 6 *Seld.* 10 *N. Y. Rep.* 437. 29 *Barb.* 35.) The company may require a passenger to remove his baggage within a reasonable time after arrival, and thus relieve the company of its liability as common carriers, (4 *E. D. Smith*, 453,) or to give the owner notice to take it away, as in 3 *Comstock*, 322. (31 *Barb.* 38.) As to the liability of common carriers for the loss of baggage, see 1 *E. D. Smith*, 95 ; 3 *id.* 181 ; 4 *id.* 178, 453 ; 4 *Bosw.* 225 ; 6 *Hill*, 589 ; 10 *How.* 330 ; 4 *Brig.* 145 ; 3 *Barb.* 451 ; 13 *Ill. R.* 476 ; 2 *Harris*, 129 ; 2 *Comst.* 135. As to interest on value of lost baggage, see *Rawson* v. *Penn. R. R. Co.*, (2 *Abb. N. S.* 220.) The company had an office and place of business in the city of New York. They solicited trade and did business in the city, made contracts as other persons doing business in New York do, and must be bound by the custom and law of the place where they make their contract. It is, and for a long time has been, the law, as well as the custom, of all common carriers to make contracts under the law and custom of the state of New York, and they are, as common carriers, bound by the law and custom regulating the same, and nothing but a written agreement of both parties can release the company from the effect of rule and custom governing common carriers. No exception or practice of the company can do it. They are bound by the general custom and rule. (*Liability for Fire. Gould* v. *Hill*, 2 *Hill*, 623. *Cole* v. *Goodwin*, 19 *Wend.* 281.) If baggage is not called for in a reasonable time, the liability of the company as common carriers ceases. The same as to goods, after notice of arrival. (26 *Wend.* 591. 3 *Comst.* 322. 29 *Barb.* 39.) The company, as common carriers, are obliged to insure against fire. (*Redfield on Railways*, 233, *and the cases there cited under head* 3.) When goods reach their destination, the carrier is not released until he has *given notice* to the consignee of

their arrival, and the consignee has a *reasonable time* to take them away. (3 *Comst.* 322. 1 *Denio*, 45, 47. 17 *Wend.* 305. 29 *Barb.* 39.) Common carriers can, by an express agreement *with persons*, make such an arrangement or agreement in the special instance that they may choose; but unless they do so, they are liable as common carriers under the law. (1 *Kern.* 490.) A particular custom or usage at any place must be brought home to the knowledge of the *passengers*, or be so universal, and of such long continuance, that the jury may infer the passengers know it. (17 *Wend.* 305, *and the cases therein cited.*) The plaintiff could not, at that time, have been informed that it was the custom to dump the trunks in the night and burn them on Sunday. This is a new custom, not in general use as yet. This baggage was under lock and key, and in the express possession of the defendants when it was lost, in the charge of the defendants' agent. The defendants are as much liable for the loss on shore in their room, as on the boat. (21 *Wend.* 354. *Koyn* v. *Erie R. R. Co. Clerke, J., N. Y. special term.*) Common carriers are bound to deliver to each passenger, at the end of his journey, his trunk or baggage. The passenger is not required to expose his person in a crowd, or endanger his safety, in the attempt to designate it or claim his property. (19 *Wend.* 251.)

II. The defendants lost this trunk by gross negligence, misconduct and carelessness. 1. Removing the trunk from the boat on Sunday was a crime. (*Laws of the State of Connecticut, p.* 654, *tit.* 3.) 2. If it had remained on the boat, it would have been safe. 3. No watchman in the baggage room. If there had been, the trunk could have been saved; taken out of the building. 4. No insurance on property in the building. The company do not insure. 5. No watchman in the depot. If there had been, he could have put out the fire in its first start, or given the alarm in season to have secured the property, or carried the trunk to a safe place. 6. Taking the trunk, at night time, off of the boat,

and locking it up on shore, unknown to the plaintiff ; then the man leaving the baggage room about 8 A. M. and not returning till it was all in flames, is in and of itself a careless, negligent and very unsafe way of doing business, and this practice was the cause of the loss of the trunk. Had it been *left as usual*, till an hour before the boat went on the next trip, as per witness S. McGowen, all would have been well. 7. This loss was by natural causes, by an accidental fire, not by lightning, hurricane or tempest, or set on fire by the rebels ; neither inevitable accident nor the act of God. The act of God, as it is called in law, in order to excuse a *common carrier*, must be such an event as could not happen by the intervention of man, nor be prevented by human prudence. (*Angell on the Laws of Carriers*, § 156. 13 *Barb.* 353, 357. 6 *John.* 160.) The defendants stood in the relation of common carriers, and are liable for the loss. (*Id.*) Fire was found a natural cause, and carrier liable. (10 *Barb.* 39 *id.* 488. 6 *Seld.* 437.) As such common carriers, the defendants are liable for the trunk. Nothing could release them but the lapse of time, notice to the defendants to come and take the trunk away, and an inevitable accident or act of God, or a special agreement between the parties. (13 *Barb.* 353. 3 *Comst.* 322.) Common carriers are regarded as insurers of the property intrusted to them, and are responsible for all the injuries, except such as are occasioned by the act of God and the public enemies. (6 *Seld.* 10 *N. Y. Rep.* 437, *Willard, J. Angell on Carriers*, §§ 46, 47. *Story on Bailments*, § 489. 2 *Kent's Com.* 597. *Goold* v. *Chapin*, 10 *Barb.* 612. *Foot* v. *Stoors*, 2 *Barb.* 326.) The liability of the common carriers had not terminated when the fire occurred. They still had the custody of the goods, and had a further duty to perform in regard to them. (6 *Seld.* 10 *N. Y. Rep.* 436.) In the same case, EMOTT, J. says : " A loss arising from an accidental fire, or a conflagration of a city, without any default whatever on the part of the carrier, it is well settled, furnishes no

excuse for the carrier, for it does not fall within the exception." (19 *Wend.* 234. 2 *Kent's Com.* 602. *Story on Bailments*, §§ 507, 511, 528. *Hyde* v. *Trent Nav. Co.*, 5 *Term R.* 389. 4 *Bing.* 314. *See also* 10 *N. Y. Rep.* 437.) The contract was made in New York, subject to the laws of New York. . All the rules of law of New York, in regard to common carriers, at once attached to the contract, and applied to this contract. The laws and customs of the place where the contract is made, are to govern carriers, all the incidents of the law with it. The *lex loci* governs the contract—the laws of the country where the contract was made. (*Story on Conflict of Laws*, § 272. 8 *Peters*, 361, 362. 13 *id.* 378, 379. 29 *Barb.* 35, *and all the rules cited.*) Story (*Conflict of Laws*, 272) says: "The rule has been fully recognized in the courts of common law, and it has been directly decided by these courts that the interpretation of the contract must be governed by the laws of the country where the contract was made." (1 *Bing. N. C.* 151, 139, *post.* 316. 1 *Barn. & A.* 284. 8 *Peters*, 361, 372. 13 *id.* 378, 379.)

III. In this case the statute law of Connecticut was deliberately violated, and by such criminal act the loss occurred. How much more reason there is for holding the defendants *liable* for a *crime* than a neglect of *duty*. I consider the case of *Fitch* v. *Livingston*, (4 *Sandf.* 505,) as directly in point, and it controls this case. That case was affirmed in the Court of Appeals, and not reported. The criminal act of the defendants rendered it impossible for the delivery of the trunk on Monday. The statute prohibits the keeping open of a warehouse on Sunday, so we had no right to do an act contrary to *law*. The trunk was in the warehouse all day, and before sunrise, and burned before sunset. They placed the trunk, unbeknown to us, beyond our reach, and their own act must control them, and release us. 1. By the statute of Connecticut, Sunday is *no day;* no one can legally perform any manual labor. Carting away baggage for hire, is manual labor, and the plaintiff was not compelled

Jones *v.* Norwich and New York Transportation Company.

or required to commit a crime. The boat should have *been left alone,* things *untouched,* till Monday ; then all would have been well, and the trunk safe. (*See Laws of Connecticut,* 1854, *revised ed.* 769.) By the defendants' own showing, the *room* in the depot was and is considered the same as a part of the boat, and *under their control; and in fact,* the trunk was put in there before 5 A. M. for the purpose of washing off the boat. The plaintiff was ignorant of the fact of its removal, and supposed it was on the boat, in the baggage room. It is plain the plaintiff did not want the trunk taken off of the boat, as she called at the boat for it at 8 A. M. Monday, which certainly was in reasonable time, under any and all circumstances. Surely the defendants cannot take advantage of their own wrongful act. The trunk never parted from the defendants' control. They had it under lock and key when they burned it. They had not given notice to have it taken away. The company clearly violated its own rule and custom as to local baggage ; for McGowen says that local baggage remained on the boat till about an hour before the boat starts again ; there in this small room.

*By the Court,* SUTHERLAND, J. The plaintiff is a resident of Massachusetts. The defendants are a Connecticut corporation, running steamboats for carrying passengers and freight, between New York city and New London, in connection with a railroad or railroads from New London to Boston.

On Saturday, the 7th of May, 1864, the plaintiff being in New York took passage and a state room on the defendant's boat, *City of Boston,* for New London, receiving a check for her trunk, containing valuable wearing apparrel and certain other articles, to New London. The boat arrived at New London between half past 12 and 1 o'clock, the next morning, the usual time. The plaintiff remained in her state room until between 8 and 9 o'clock, when upon leaving it, without presenting the check for her trunk or notifying any one that she intended leaving it, or making any inquiry

about it, or for it, she got into a wagon without it, and was driven to the residence of a friend, about three miles from New London.

The case does not leave room for a doubt that the plaintiff left the boat supposing that her trunk remained on board, and knowing that the boat was not to leave for New York, until 4 or 5 in the afternoon of the next day, (Monday,) that she intentionally left without her trunk, intending to return from her friend's the next day about 12 or 1 o'clock, present her check, get her trunk, and take the train for Boston.

Before the plaintiff left her state room on the Sunday morning the boat arrived at New London, her trunk had in fact been removed from the boat by the defendants' employees to a baggage room, in the depot, on or near the dock, which room had been rented and was used by the defendants for the purpose of putting and keeping unclaimed baggage, or baggage which it was convenient for the defendants to have removed from the boats, before called for, where the trunk remained, under the control, and in charge, of one or more of the defendants' employees, until it, with its contents, was destroyed by fire, with the depot, about 5 o'clock in the afternoon of that day, without negligence on the part of the defendants or any of their agents or employees.

The plaintiff discovered her loss when she returned to the boat the next day, (Monday,) about 12 o'clock, to get her trunk and take the train for Boston.

A statute of Connecticut (proved by the plaintiff on the trial) provides : " That no person shall do any secular business, work or labor, works of necessity and mercy excepted ; nor keep open any shop, warehouse, or workhouse ; nor expose to sale any goods, wares, or merchandise, or any other property ; nor engage in any sport, game, play, or recreation, on Lord's day, between the rising of the sun and the setting of the same ; nor shall any traveler, drover, wagoner, or teamster, travel on said day, between said times, except from

Jones *v.* Norwich and New York Transportation Company.

necessity or charity ; and every person so offending, shall pay a fine not exceeding four dollars, nor less than one dollar ; but Haywards may perform all the duties of their office on the Lord's day."

This action was brought to recover the value of the trunk and contents.

I have stated the case stripped of all extraneous and immaterial facts and evidence.

Assuming for the present, that this court has jurisdiction, the question is, are the defendants liable. I think not.

The undertaking of the defendants *as common carriers* was to carry the plaintiff and her trunk to New London, and to deliver the trunk with its contents to her there, on presentation of her check for it, within a reasonable time, under the circumstances, after the arrival of the boat at New London.

The question is, whether the plaintiff discharged her duty in regard to the delivery of the trunk ; whether, by neglecting to present her check and claim her trunk, she had not made the defendants mere gratuitous bailees of the trunk at the time of the fire ? I think she had. (*See Powell* v. *Myers,* 26 *Wend.* 591 ; *Cary* v. *Cleveland, R. R. Co.,* 29 *Barb.* 35 ; *Roth* v. *Buffalo and State Line R. R. Co.* 34 *N. Y. Rep.* 548.) If she had, then the defendants are not liable, for it is not even claimed by the plaintiff that the fire was caused by the negligence of the defendants, or of any of their agents or servants.

The question of liability is the same (independent of the act of congress referred to by the defendants' counsel as to the applicability or pertinency of which it is not necessary to pass) as it would have been, if the trunk had never been removed to the baggage room *of the defendants,* in the depot, but had remained on the boat, and the boat and trunk had burned at 5 o'clock on the Sunday afternoon, without fault or negligence on the part of the defendants, their officers, agents or employees.

The removal of the trunk to the defendants' baggage

room in the depot, before the plaintiff left her state room on the morning of the arrival, did not relieve the defendants from their undertaking and liability as a *common carrier;* and if the depot and trunk had been burned before the plaintiff left the boat for her friend's residence, no doubt the defendants would have been liable. The question is as to liability for *baggage* not freight — the baggage room in the depot was not a warehouse, or wareroom — and there is no question of notice, or of the necessity of notice, on the part of ·the defendants, in the case. The plaintiff did not remain in her state room to an unreasonable hour in the morning, and she could not have been expected to present her check for her trunk before she left her state room.

If the plaintiff had presented her check and called for her trunk before she took conveyance for her friend's residence, the presumption is, that she would have got it, though it had been put in the baggage room in the depot, but she did not want to be troubled with it, and intentionally abandoned it to the care of the defendants, without any explanation, special arrangement, or notice, until it was destroyed by fire, about seventeen hours after her arrival at New London.

Travelers by railroads and steamboats, usually in person or by express agents, present their checks, and receive their baggage, on their arrival at their place of destination, or as soon thereafter as the checks can reasonably, under the circumstances, be presented and the baggage delivered; but in this case, it is undisputed that the plaintiff left her trunk in the keeping and charge of the defendants, beyond the usual time, and up to the time of the fire, *for her own convenience,* and that she intended to have so left it for nearly a day longer. In fact the plaintiff did not come for her trunk until 12 or 1 o'clock of the day after the fire.

I think, under the cases above cited, we should hold the defendants, on the undisputed circumstances of this case, not to be liable.

Clearly we should so hold, independent of the Connecticut

statute. Does that statute furnish any excuse for the plaintiff's leaving her trunk in charge of the defendants, until it was destroyed by fire, as she did? I think not. I think if a Connecticut court of this day, would hold that the work or labor of taking the trunk out of the baggage room, and delivering it to the plaintiff on the Sunday morning, would have been work or labor within the meaning of the statute, that the same court would further hold that it would have been under the circumstances a work or labor of necessity, and fairly within the first exception in the statute. And I think the same court would hold that though the plaintiff, in traveling from the boat to her friend's residence, was or might have been a traveler within the meaning of the statute, yet that her traveling on that occasion was, or might fairly be considered to have been, from necessity, and within the other exception in the statute ; especially, as the same court would probably presume, that the plaintiff with her friend or some of his family, attended some orthodox church, more than once on that Sunday.

This must have been the construction which the plaintiff herself put upon the Connecticut statute — for she must be presumed to have had knowledge of it ; and she is entitled to the presumption that she did not intend to commit either a sin or a crime, by going from the boat to her friend's house on Sunday morning ; and it would probably be doing injustice to her intellect, to suppose that she thought that the circumstance of omitting to take her trunk with her, absolved or protected her from the penalty of the Connecticut law.

In my opinion this statute does not vary or affect the question of liability in this case. I think the question of liability would have been the same if the boat had arrived at New London on Monday or Tuesday morning, at the same hour.

Certainly, whatever may have been the plaintiff's conscientious scruples, or construction of the Connecticut statute, that statute was no excuse for her leaving her trunk as she

did, without any special arrangment for its keeping, until her return on Monday, and without even notice to the captain, baggage master, or other employee of the defendants. If such notice had been given, and the trunk had been retained without objection, the question of liability would have been a different one.

But has this court jurisdiction of the cause of action ?

The question of jurisdiction is only as to jurisdiction of the cause or subject matter of the action. The question of jurisdiction is the same as if the defendants voluntarily offered and submitted to the jurisdiction of this court up to the time of the appeal. There is no question as to the service or due service of a summons, under sections 134 or 135 of the Code

The question of jurisdiction on this appeal is limited to the inquiry, whether this court has jurisdiction of the *case* or cause of action, assuming that the defendants were either properly served with summons or process, or voluntarily appeared.

No doubt the defendants could raise this question of jurisdiction for the first time on this appeal. (*Dudley* v. *Mayhew,* 3 *Comst.* 9. *Burckle* v. *Eckhart, Id.* 137.)

And it is proper that the question of jurisdiction should be decided, though my associates should concur in my conclusion on the question of liability ; for if the court has not jurisdiction of the cause of action, a new trial should not be ordered, but the complaint should be dismissed, probably without costs to either party.

A section of the Revised Statutes, (2 *R. S.* § 15, 459,) was amended by act of March 15, 1849, (*Laws of* 1849, *p.* 142,) so as to allow actions to be brought in this court, and in the Superior Court of the city of New York, and in the court of common pleas in and for the city and county of New York, against a foreign corporation, for the recovery of debt or damages, " *arising upon contract made, executed,*

*or delivered, within this state,* or upon any cause of action arising therein."

Section 427 of the Code, is one of the sections which were added to the Code in its revision, by act of April 11, 1849. This section provides, that an action against a foreign corporation, *may be brought* in the same courts, "in the following cases :

1. By a resident of this state for any cause of action.

2. By a plaintiff not a resident of this state, when the cause of action shall have arisen, or the subject of the action shall be situated within this state."

The plaintiff is a non-resident, and the defendants are a foreign corporation, and it is clear that her cause or right of action, did not arise in this state, but that it arose in Connecticut ; and I think it clear that the words or phrase, "subject of the action," as used in section 427 of the Code, are not applicable to her case. I do not know what the subject of her action is, unless it is the same thing as her cause of action.

But, her action must be regarded, I think, as an action on contract ; and, so regarded, it is an action for damages arising upon a contract made within this state, and is within the provision of the act of March 15, 1849, giving this court jurisdiction in such a case ; and this court has jurisdiction of the plaintiff's cause of action, if that provision of the act of March 15, is in force ; and it is in force, unless the adoption of sections 427, 468 and 471, in the revision of the Code in 1849, abolished or repealed it.

The Code of 1848 was passed April 12, but it took effect, excepting four or five sections, July 1, 1848. The last section (473) of the revised or amended Code of 1849, that is, the last section of the act of April 11, 1849, revising or amending the Code of 1848, declared that the act should take effect on the 1st July, 1848, except that sections 22, 23, 24 and 25, should take effect immediately. This would

seem to show, that the revised Code of 1849, was intended to be substituted for the Code of 1848, *as of the time the Code of* 1848 *took effect,* that is, July 1, 1848, and if so, it is difficult to see how it can be held that sections 427, 468 and 471 of the revised Code of 1849, or either of them, repeal, or can in any way affect, the act of March 15, 1849.

But, if the revised Code of 1849, took effect from its passage, or twenty days thereafter, as Judge Barculo seems to have thought, in *Gamble* v. *Beattie,* (4 *How. Pr.* 41,) I am of the opinion, that the provision of the act of March 15, 1849, giving this court jurisdiction of the plaintiff's cause of action is not inconsistent with section 427 of the revised Code, and therefore not impliedly abolished by it, or expressly by section 268 or 271 of the same Code. Upon the theory that these sections took effect from the passage of the revised Code, or twenty days thereafter, I am of the opinion that section 471 should be regarded, not as limiting the jurisdiction of the courts mentioned in it to the cases mentioned therein, but as extending such jurisdiction to certain cases other than those mentioned in the act of March 15, 1849, leaving this act, so far as it confers jurisdiction upon this court, in full force and effect.

As to the Superior Court of the city of New York, and the court of common pleas in and for the city and county of New York, section 427 cannot be regarded as a rule of limitation of jurisdiction of actions against foreign corporations to the cases mentioned in it, for section 33 of the same revised Code gives them precisely the same jurisdiction, as to foreign corporations, that had been given them by the act of March 15, 1849. Section 427 must be presumed to have been adopted in view of section 33, and cannot be held to be inconsistent with it ; and as to the Supreme Court, I think section 427 should be presumed to have been adopted in view of the act of March 15, 1849, and ought not to be regarded as inconsistent with it.

To hold that the legislature intended by sections 427 and

33 to confirm in the superior and common pleas courts the jurisdiction given by the act of March 15, 1849, and by sections 427, 468 and 471 to take away from this court the jurisdiction given by the act of March 15, would be charging the legislature with an extraordinary, unreasonable and inconsistent freak of legislation.

In *Whitehead* v. *The Buffalo and Lake Huron R. R. Co.,* (18 *How. Pr.* 232,) and in *Campbell* v. *The Proprietors of the Champlain and St. Lawrence R. R.* (*Id.* 416,) it would appear to have been assumed that the act of March 15, 1849, remained in force.

For a more full history of the crude legislation bearing on this question of jurisdiction, see Judge Hand's opinion in *President, &c. of Bank of Commerce* v. *The Rutland and Washington R. R. Co.,* (10 *How. Pr.* 4, 5,) and the cases in 18 *id.* (*supra.*)

The judgment should be reversed, and a new trial ordered, with costs to abide the event of the action.

[NEW YORK GENERAL TERM, November 4, 1867. *Leonard, Clerke* and *Sutherland,* Justices.]