By the Court.—Speir, J.
The complaint states as the cause of action that the defendant, on October 8, 1870, as common carriers of passengers and their *528 baggage, received into its cars the plaintiff with his baggage, to wit: one portmanteau containing wearing' apparel, money for his journey, and other articles, to be carried to the city of New York, and-there to deliver the said baggage ; and that by the negligence and improper conduct of the defendants, said portmanteau and contents were lost, to the plaintiff’s damage, &c.
The answer admits that a portmanteau was received by the defendants on or about October 8, 1870, and ' alleges that the same was by the defendants carried to New York; and then had safely, at the defendants, baggage room, ready for delivery to the owner until after the expiration of a reasonable time, for the owner' to receive the same, and tor a long time thereafter ; but the owner failed to call for it, and it was thereafter, without fault on the part of the defendants, stolen. '
■ It appears to be well settled that the obligation of a railroad company is to take whatever is delivered and received as baggage from a passenger in the baggage car of a passenger train, in which a passenger takes his passage; and take it along with, and deliver it to the passenger at the place of destination, in the usual manner of transporting and delivering baggage (Jones v. Norwich & N. Y. Transportation Co., 50 Barb. 193 ; Glasco v. N. Y. C. R. R. Co., 36 Id. 557).
This is so, though nothing be said about it, or any separate agreement made concerning it; and no compensation be made for carrying the baggage. The contract to carry the ordinary baggage of the passenger is implied from the usual course of the business, and the price paid for fare is considered as including a compensation for carrying the freight (Hawkins v. Hoffman, 6 Hill, 586 ; Powell v. Myers, 26 Wend. 591). If the baggage of the passenger be taken, whether ordinary or extra, it is to be carried with the passenger, unless there is some agreement to the contrary.
The obligation is the same whether the baggage is *529 within the quantity allowed to a passenger, to be carried without any charge other than his ordinary, fare, or whether it is an extra quantity for which an additional charge is made. Any other rule would be productive of hardship and inconvenience, and subject travelers to injury by loss and vexatious delays (Glasco v. N. Y. C. R. R. Co, supra). I have extracted this much from the opinions of these learned judges to bring into view the grounds upon which the decisions are based, and to show that it must follow, that the carriage of the baggage is an incident to the carriage of the passenger ; and that agents of companies have no authority to receive baggage on their account, except as incidental to passenger transportation (Redfield on Railways, 4 ed. vol. 2, 39). This leads us to consider the first question presented in the case, Did the relation of carrier to a passenger and his baggage exist between the plaintiff and defendant ?
The tickets which the plaintiff procured do not, on their face, contract to carry the plaintiff over defendants’ road. They do undertake to carry him by another route, viz., by the Rensselaer and Saratoga Railroad and the Peoples’ Line of Steamers ; and he went that way. The check given for the baggage, anjd the testimony shows it was to be taken with the owner and the inference and legal presumptions are that it was to go over his route. The baggage was, in fact, taken to Troy, and over defendants’ road to Rew York, whether by mistake, accident, or intention does not, appear. The Grand Trunk Railway at Montreal, by. its agent, the Rensselaer and Saratoga Road, must be held responsible for this deviation of the route ; for they issued the check and the tickets. It is not shown that the plaintiff passed oyer any part of the defendants’ road, and the inference, both from his ticket and stopping at Albany, is that he went the nearest route by continuing on the Rensselaer and Saratoga Road *530 on the west side of the river. The proof is clear that the baggage at the junction crossed, over the river to-Troy, and passed down on the east side, on defendants* road to New York.
The court may take judicial notice of established railroad routes generally known and used (Maghee v. Camden and Amboy Railroad Co. 45 N. Y. 524). -The-defendants’ baggage-master taking possession of the baggage at Troy without any authority to receive it, except as incidental to the carriage of the plaintiff, and the delivery of it to Mm by the Rensselaer and Sara-' toga Railroad, was an implied representation that the plaintiff had a ticket running over defendants’ line. The agent who took the baggage had a right to suppose that the plaintiff was on the same line. This was-not the fact. Nor was it the undertaking between the parties, or cause of action alleged in the complaint; for at no time £ ‘ was the plaintiff received into defendants’ cars with his baggage ” as there alleged. Taking the baggage by an agent through mistake or accident, without authority, can in no legal sense establish that the relation of carrier to a passenger exists between the plaintiff and defendant.
Nor do we think that after rejecting all extraneous circumstances, the evidence can fairly be said to establish that relation, and unless it exists the plaintiff’s case is not made out, and the defendants can only be responsible for ordinary care. The question wh ether the baggage was carried by the defendants under any arrangement other than incidental to the carriage of the plaintiff as a passenger, was not presented by the pleadings. The evidence, we think, showed that the course of business was for the defendants to accept and carry the passenger and his' baggage when his ticket ran over their road. The learned judge told the jury, if from these circumstances they believed, that this baggage was taken by the defendant under some ar *531 rangement which it had made with 'the Grand Trunk Bailroad, then the defendant was a common carrier as respects that trunk.
The facts proved are not only inconsistent with an agency on the part of the Grand Trunk Bailroad to sell these tickets which should carry the plaintiff over defendant’s road, but we think they do not imply such agency. The testimony of the witness, Hicks, on his cross-examination, is “The coupon attached to this ticket from Whitehall to Albany passes passengers over the Rensselaer and Saratoga Railroad.” Then the counsel, not the witness, says, “And over any part of the N. Y. Central and Hudson River Railroad Company,” witness says “Yes, sir.” This is immediately explained by the witness, as follows: “The Bensselaer and Saratoga Bailroad Company operate the railroad between Albany and a point north of Troy, called the junction. That ticket takes a passenger from Whitehall to Albany, by the Bensselaer and Saratoga Bail-road, not going first to Troy, not necessarily, to West Troy, and then coming down on that side of the river to Troy. That ticket reads from Albany to New York by the Peoples’ Line of Steamers, which is a separate corporation from the Hudson River Railway.” This embraces all the testimony on the subject of agency. After this positive evidence relating to the ticket, and the course of travel indicated by it, we think positive proof of agency was required to justify the submission of the question to the jury.
That it was in the power of the Grand Trunk Bail-road Company or its connecting line to do something contrary to the course of business, and that there were instances of that kind testified to by some of the witnesses, is not evidence of an arrangement, nor evidence from which an arrangement can be inferred.
The ticket was evidence of the payment by the plaintiff, to the Grand Trunk Railway, of the fare for *532 the carriage of himself and baggage, from Montreal to New York, to be by the People’s Line of Steamers, and the proprietors of that line received the ticket and the undetached coupon, and charged the Grand Trunk Railway Company with the fare of the carriage of the plaintiff and Ms baggage, between Albany and New' York. It would be most extraordinary to infer that the Grand Trunk Railway had arranged either .to fay another line for the carriage of the plaintiff’s baggage, or to have his baggage carried by another line.
If these views be correct, the examination of the remaining question is not material; but as it was discussed by counsel on the argument, it may be noticed. That question is : Did the owner call within a reasonable time for his trunk % If we admit as claimed by the plaintiff, and charged by the learned judge, that the jury might find from the evidence, and did find that the arrangement above alluded to existed for the carriage of baggage over the defendants’ road, for which the Grand Trunk whs liable to pay another line, I am of the opinion that the defendants fully discharged their duty as carriers of passengers and their baggage. That duty is to carry the baggage safely upon the train upon which it is received, and have the baggage ready for delivery on the arrival of the train, and for a reasonable time thereafter ; and if the owner fails to call for it within such reasonable time, the rigorous liability of the carrier ceases, and ordinary care is the measure of duty (Redfield on Railways, 4 ed. vol. 2, 40; Ovimit v. Harshaw, 35 Vt. 605; Roth v. Buffalo & State Line Railway Co., 34 N. Y. 548 ; Burnell v. N. Y. C. R. R. Co., 45 Id. 184 ; Glasco v. N. Y. Cen. R. R. Co., supra ; Holdridge v. Utica & Black River R. R. Co., 56 Barb. 191).
The plaintiff’s ticket was good by its terms for thirty days from date of issue. He might make a coritinuous trip between Montreal and New York at any *533 time within thirty days from the date of his ticket. It was customary to allow passengers to stop at the terminus of either of the coupons. He did stop over at Albany and Plattsburg, and came to ¡New York city on the afternoon of Tuesday, and demanded his baggage on Wednesday, between eight and twelve o’clock in the forenoon. It was clearly the plaintiff’s duty, knowing that his baggage would precede him by as many days at least as he stopped over, to have had it checked according to the intervals he tarried on the way. When he checked through to ¡New York, it represented, in effect, that he intended a continous trip to that place. After having misled the carriers by the above representation, he had no right to suit his own pleasure or convenience to prolong their rigorous liability (Hedges v. Hudson River R. R. Co., 49 N. Y. 223).
There was no community of interest between the defendants and the Grand Trunk Railroad Company, and it is quite certain that the defendants did not derive any pecuniary benefit from the transportation (Milnor v. N. Y. & N. H. R. R. Co., 53 N. Y. 368). Again, the relation as we have seen of a carrier to a passenger and his baggage, did not exist between the plaintiff and defendants. That relation calls for the carriage of the passenger with his baggage by the same route and at the same time, and is not severable. The portmanteau was received on October 9, at defendants’ station in Twenty-ninth - street,, and the defendants either held it in their store-room, by the Westcott’s Express Company as their agents, or deposited it with that company for storage, and due care seems to have been exercised in regard to it until the demand was made for it in the forenoon of October 12. It was on hand at six o’clock in the morning of that day, and stolen after that hour, and before the demand was made. The plaintiff was not present to receive the ' *534 portmanteau on arrival, and he was not known so that notice could be given to him. The carrier should not, in justice, be held to the strict liability as insurer of the goods for any indefinite time at the plaintiff’s convenience (Fisk v. Newton, 1 Denio, 45; Northrop v. Syracuse Railroad Co., 5 Abb. Pr. N. S. 425).
There being no conflict of testimony regarding the time of the receipt of the trunk, the time it was held, the demand and loss, the care exercised in regard to it, it follows, I think, that the submission of the case to the jury, was error.
The judgment should be reversed, a new trial granted, with costs to the defendants to abide the event.
Monell, Ch. J., concurred in reversing the judgment, on the first ground stated in foregoing opinion.