JACOBS *v.* TUTT *et al.*

(*Circuit Court, W. D. Missouri, W. D.* January 16, 1888.)

1. CARRIERS — LIABILITY FOR LOSS OF BAGGAGE — JEWELRY — KNOWLEDGE OF AGENT.
   Where, in an action against a railroad company to recover the value of a trunk and contents, which were stolen from the company, it was shown that it was the trunk of a jewelry salesman, containing his stock in trade; that the agent who checked it knew of the fact; and that plaintiff made no effort at concealment: *held*, the company was liable as for loss of ordinary baggage.

2. SAME—LIABILITY FOR LOSS OF BAGGAGE—DUTY TO CLAIM.
   In an action by the owner against a railroad company for the value of a trunk and its contents, alleged to have been stolen while in the company's possession, it was shown that he arrived at his destination, and his baggage was received at the same time, it being the afternoon of one day, and he did not call for it until between 9 and 10 o'clock next day. *Held* not claimed within a reasonable time.

**3.** SAME—LIABILITY FOR LOSS OF BAGGAGE—TIME OF LOSS.

Where it appeared, on the trial of an action for the value of baggage stolen from a railroad company, that the business of the station often required as much as two hours from the time of arrival until the delivery of baggage, and that the baggage in question was stolen during that time: *held,* the company was liable.

**4.** SAME—LIABILITY FOR LOSS OF BAGGAGE—UNION DEPOT COMPANY.

Where a railroad company delivers all of its baggage to a Union Depot Company, to be cared for and delivered to passengers on presentation of checks, it makes such depot company its agent for such purpose, and is liable as a common carrier for loss of such baggage while in the Depot Company's custody that occurs before a reasonable time for delivery has elapsed.

Intervening Petition. On submission.

This is an action by Ferdinand Jacobs, plaintiff, against Tutt & Humphreys, receivers of the Wabash Railroad, defendants, to recover the value of a trunk and contents, alleged to have been stolen while in defendants' hands.

*Fenlon, Ringolsky & Block,* for plaintiff.

*Priest* and *John W. Henry,* for defendants.

THAYER, J. The facts as found by the court, and upon which the decision in this case depends, are as follows: Plaintiff is a traveling dealer in jewelry, and makes a practice of carrying his entire stock in trade about the country in a trunk especially adapted for that purpose. On October 23, 1886, he took passage on board one of the defendants' trains at Wakenda, Missouri, for Kansas City, at which latter place he arrived about 8:30 P. M. of the same day. While at the station at Wakenda, plaintiff proposed to sell the station agent a watch and chain, and with that view he opened his trunk in one of the rooms of the station-house, and took out two watches and a large bunch of watch chains. The station agent, after some conversation, declined to buy; but a boy in his employ purchased a watch in his presence and borrowed money of him to pay for the same. The station agent himself furthermore promised to buy a watch from the plaintiff on his next trip. After this occurrence, he checked plaintiff's trunk from which the watches and chains had been taken, to Kansas City, Missouri, without inquiry, and as ordinary baggage. Plaintiff came through on the same train with his trunk. In view of all the circumstances, there can be no reasonable doubt that defendants' agent at Wakenda understood that the plaintiff was a dealer in jewelry, and that he carried more or less of his stock in trade in the trunk in question. On the arrival of the train at Kansas City, plaintiff went to his hotel, (the same being in the Union depot building at the station,) and did not call for his baggage until between 9 and 10 o'clock A. M. of the following day,—Sunday, October 24, 1886. In the mean time the trunk and contents were stolen from the custody of the Union Depot Company, and plaintiff never recovered but a portion of the contents, of the value of about $236.

From various circumstances proven on the trial I infer and find that the trunk in question was stolen within less than two hours after its arrival, very likely not much later than 9 P. M., October 23, 1886.

The Union Depot Company before alluded to appears to be, and I find it to have been, a corporation engaged in the business of furnishing depot facilities for various railroads (the defendants' road included) whose trains enter Kansas City. None of said roads maintained depots at Kansas City, or baggage or waiting rooms. Such facilities are furnished by the depot company. The latter company receives all baggage from defendants' baggage cars, removes the same from the platform to its baggage-room, and delivers the same out of that room to passengers on presentation of checks. It also receives baggage intended for outgoing trains over the various railroads that use its depot, and gives checks for the same over such roads, and places the same on board of baggage cars. All of defendants' passenger trains arrive and depart from the platform of said Union depot. That is the terminal point of the route for which fare is paid. On the evening of October 23, 1886, at about the hour when plaintiff arrived at Kansas City a number of trains arrived and departed from the depot in various directions. The arrival and departure of such trains ordinarily led to an accumulation of baggage at that hour, and occasioned more or less delay in the delivery of baggage received from incoming trains. Frequently it seems that as much as two hours elapsed before the depot company could conveniently, and in the ordinary course of business, deliver baggage that had been received.

Upon the foregoing finding of facts, my conclusions upon the various points of law that have been discussed are as follows: *First.* That the defendants' station agent at Wakenda having checked the trunk in question as baggage, with knowledge that it contained jewelry, and without any concealment practiced by the plaintiff as to the contents of said trunk or the value of the same, the plaintiff is not estopped from demanding full compensation for the trunk and its contents, as though the contents were in fact ordinary baggage, and not merchandise. *Railroad Co.* v. *Fraloff*, 100 U. S. 27, 28. *Second.* That the plaintiff did not demand his trunk within a reasonable time after its arrival in Kansas City. He should have demanded it on the evening of his arrival. *Roth* v. *Railroad Co.*, 34 N. Y. 548; *Jones* v. *Transportation Co.*, 50 Barb. 193; *Railroad* v. *Mahan*, 8 Bush, 184; *Burnell* v. *Railroad*, 45 N. Y. 184; Hutch. Carr. §§ 707–715. *Third.* I conclude that, under the circumstances of this case, (it not being customary to deliver baggage from the platform in Kansas City immediately on the arrival of trains,) that plaintiff might lawfully postpone claiming his baggage until such hour as the depot company was ordinarily prepared to deliver baggage, (say for a space of time not exceeding two hours,) and that in the mean time the defendants' liability as a common carrier and insurer against loss would continue. *Fourth.* I conclude that plaintiff's baggage was in point of fact stolen within less than two hours after its arrival, and before the lapse of a reasonable time for claiming the same, and that by reason of such fact plaintiff is not precluded from charging the defendants as insurers for the loss of the same. *Fifth.* I conclude that the Union Depot Company, on the facts disclosed, was the *agent of the defendants*, at least in taking baggage from their trains, removing the same to its baggage-room, and there delivering

the same to passengers; and that the defendants are accordingly liable in this case. *Lin* v. *Railroad*, 10 Mo. App. 132–134.

Whether the defendants would be liable for baggage brought over their road and lost out of the baggage-room of the Union Depot Company *after* the lapse of a reasonable time for delivery, and after defendants' liability as insurers had expired, or whether the *Union Depot Company would in that event alone be liable* for such loss, as warehouseman, and on the ground of negligence only, it is unnecessary in this case to determine. I will enter an order directing the receivers to pay plaintiff the value of the trunk and contents at the time of the loss, less the value of the jewelry that was recovered and returned to him. The testimony as to the value of the contents of the trunk is not wholly satisfactory. Hence I will order an inquiry before one of the standing masters in chancery, as to the value of such contents, and to that end will order the plaintiff to make out an inventory as near as he can from any papers, books, or accounts in his hands, of the contents of the trunk, showing the kind of jewelry it contained and quantity and value as near as may be, and requiring him to appear before the master with such inventory and vouchers, on some day to be designated by the master, and submit to an examination under oath relative to the same. The receivers will pay such sum as is reported by the master to be the value of the trunk, such payment to be made when the report has been confirmed.