Hymen Blumenthal vs. Maine Central Railroad Company.

Kennebec.    Opinion December 17, 1887.

*Railroads.    Baggage.    Common carriers.*

The plaintiff being about to take passage on one of the defendant's passenger
trains, had his valise checked by the baggage master to go upon the same
train as his personal baggage. The valise did not contain any personal
baggage, but only merchandise for sale. *Held*, that the defendant was
under no obligation to transport the valise, and was not liable for failure to
transport it.

On report from the superior court.

An action to recover the value of a valise and merchandise
contained therein amounting to four hundred and eighty dollars
and thirty-nine cents, which the plaintiff had checked as baggage
at Bangor station of the defendant's road for Augusta.

The facts are stated in the opinion.

*F. E. Southard*, for plaintiff.

While there is a case which apparently holds that pack-pedlars
have no rights which railroads are bound to respect, (see
*Blumantle* v. *F. R. R.* 127 Mass. 322,) and while it is
conceded that the checking of merchandise by a party intending
·thereby to defraud the carrier of the freight money, creates no
liability as a common carrier for its loss, it is believed that the
circumstances of this case create some liability for which the
defendant is answerable, and bring it within another, and quite
different principle from that governing cases of actual or legal
fraud, such as is spoken of in *R. R.* v. *Carrow*, 73 Ill. 348 ;
S. C. 24 Am. R. 248.

The learned editor of the American Decisions in a note to
*Hutchings* v. *R. R. Co.* 71 Am. Dec. 161, says, "The true
·doctrine seems to us to be that where there is no concealment on
the passenger's part and a carrier receives and treats as baggage
a package which he knows to be merchandise, he should be liable
in case of loss, although no extra compensation was charged for
its transportation ; and certainly he should be liable if he

knowingly receives merchandise and charges for and carries it as extra baggage." See *Great Northern R. R.* v. *Shepherd*, 8 Exch. 30 ; *Sloman* v. *R. R.* 6 Hun, 546.

The baggage master who checked the package, so far as the plaintiff was concerned, had authority to do so. *Perley* v. *R. R. Co.* 65 N. Y. 374 ; see also *Sloman* v. *R. R. supra* ; Field on Corp. § 193.

The action of the baggage master has been ratified by the defendant. Upon the authority of the agent, the defendant has raised no question either by the pleadings or at the time of taking evidence. If it had intended to repudiate the agent's authority, it should have been done long ago, and cannot be heard to deny such authority now. The defendant's silence has ratified the agent's act. 2 Kent's Com. 616 ; *Kelsey* v. *Bank*, 69 Penn. St. 429 ; *Bank* v. *Reed*, 1 W. & S. 101 ; *Ward* v. *Williams*, 26 Ill. 447 ; S. C. 79 Am. Dec. 385 and note.

The liability of this defendant is settled by the case of *Railroad* v. *Carrow*, 73 Ill. 348 ; S. C. 24 Am. Rep. 248, in which it is held that although the fraudulent checking of merchandise, as baggage and its loss by the carrier does not make the latter liable as a common carrier but that he is liable as a bailee without reward or as a mandatary. That the defendant owes to the plaintiff the duty of ordinary care and is responsible to him for gross negligence is, I think, hardly to be controverted. Story on Bailments, § § 182, 182 a ; *Coggs* v. *Bernard*, 2 Ld. Raym. 909.

Judge Story in his work on Bailments, § 278, lays down the rule in these words. "Where a demand of the thing loaned is made, the party must return it, or give some account how it is lost. If he shows a loss, the circumstances of which do not lead to any presumption of negligence on his part, there the burden of proof might perhaps, belong to the plaintiff to establish it." See also *Logan* v. *Mathews*, 6 Burr. R. 417 ; *Bush* v. *Miller*, 13 Barb. 482 ; the case of *Beardslee* v. *Richardson*, 11 Wend. 31 ; S. C. 25 Am. Dec. 598, would seem to be a leading authority upon this proposition.

"All persons who stand in a fiduciary relation to others are

bound to the observance of good faith and candor. . . . .
The property is in the possession and under the oversight of the
bailee whilst the bailor is at a distance. Under these cir-
cumstances good faith requires that if the property is returned
in a damaged condition some account should be given of the
time, place and manner of the injury." *Collins* v. *Bennett*, 46
N. Y. 490. And the rule is the same where the property is not
returned at all. *Boies* v. *R. R.* 37 Conn. 272. See *Camden
and Amboy R. R.* v. *Baldauf*, 16 Penn. St. 67; S. C. 55 Am.
Dec. 481; *Clark* v. *Spence*, 10 Watts, 335; 2 Kent's Com.
587; *Mills* v. *Gilbreth*, 47 Maine, 320; 74 Am. Dec. 487;
*Schouler on Bailments*, 25, note; *Schmidt* v. *Blood*, 9 Wend.
268; S. C. 24 Am. Dec. 143, and see a very elaborate note on
page 153; *Funkhouse* v. *Wagner*, 62 Ill. 59.

*Baker, Baker and Cornish*, for the defendant, cited :
*Blumantle* v. *Fitchburg R. R.* 127 Mass. 322; *Collins* v. *B. &
M. R. R.* 10 Cush. 506; *Stimson* v. *Conn. River R. R.* 98
Mass. 83; *Connolly* v. *Warren*, 106 Mass. 146; *Wilson* v.
*Grand Trunk Ry.* 56 Maine, 60; *Smith* v. *R. R.* 44 N. H.
330; *Macrow* v. *Great West. Ry.* L. R. 6 Q. B. 612; *Cahill*
v. *L & N. W. Ry.* 10 C. B. (N. S.) 154; *Hutchings* v. *W. &
A. R. R.* 25 Ga. 61 (71 Am. Dec. 156) ; *Alling* v. *B. & A. R.
R.* 126 Mass. 121; *Mich. Cen. R. R.* v. *Carrow*, 73 Ill. 348
(24 Am. R. 248 ;) *B & B. Ry.* v. *Keys*, 9 H. L. Cas. 556;
*Dunlap* v. *Steamboat Co.* 98 Mass. 371; *Haines* v. *Chicago
&c. . R. R.* 29 Minn. 160 (43 Am. R. 199).

EMERY, J. The plaintiff's story is substantially as follows :
Just before the morning train was leaving for Augusta, he was
at the Bangor station of the Maine Central Railroad (the
defendant) company, with a large valise, around which an oil
cloth cover was strapped with a common shawl strap. This
valise contained no personal baggage for use upon a journey, but
only merchandise for sale. He purchased of the company's
ticket agent, a passage ticket for Augusta, and then, having his
ticket in his hand, took the valise to the baggage master, and
asked him to check it for Waterville, and received from him a

check therefor. He did not inform the baggage master of the contents of the valise, but held the passage ticket so it could be seen. The baggage master made no inquiries.

The plaintiff went to Augusta, on the same morning train, giving up his passage ticket to the conductor. A few days later he presented his baggage check to the baggage master of the railroad company, at Waterville, but his valise could not be found there. He has made no inquiries at Bangor, and has made no other effort to find his valise.

He has now brought this action against the railroad company, to recover the value of the merchandise, alleging as a cause of action, its obligation to transport the merchandise safely, and its failure to do so.

The plaintiff's purchase of a passage ticket entitled him to safe transportation of himself and his personal baggage on the same train. It entitled him to nothing else. The company was then under that obligation, but under no other obligation to him. There was created no obligation to transport the plaintiff's merchandise. *Wilson* v. *Grand Trunk Railway*, 56 Maine, 60.

By going as he did with his valise to the baggage master, and asking for a baggage check for Waterville, without stating the contents of the valise, he evidently meant the baggage master to believe that he was intending to take passage on the train then about to leave, and that the valise contained only personal baggage, such as he was entitled to take with him as a passenger. The check was given him in that belief. He thus committed a fraud upon the company, to obtain free transportation of his merchandise. His fraud, however, did not impose upon the company such an obligation. The baggage master received the valise upon the implied assurance of the plaintiff, that it contained personal baggage only. If that assurance was false, and the valise contained no personal baggage, neither the baggage master, nor the company were bound to forward it, though they had received it.

The plaintiff further testified however, that other baggage masters of the same company at other stations, knew the usual contents of the valise, and he now urges that the company thus

had notice of the contents, at the time it was received by the Bangor baggage master. Notice to other baggage masters at other times, and other places, of matters existing only at those times and places, cannot affect the company at this time and place, where its only eyes, and ears in this matter, were those of its Bangor baggage master. The other baggage masters had nothing to do with the Bangor station, and were not servants of the company there.

Of course, the baggage master having received the valise could not lawfully throw it away, destroy it, or convert it, and if he or any of the company's servants has done so, the company may be liable therefor. There is no such evidence in this case however. The valise may still be at Bangor waiting for the plaintiff to remove it, or if lost, may have been lost without fault of the company. This action is for failure to transport safely, and the evidence does not show any such obligation on the company.

*Judgment for defendant.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN and FOSTER, JJ., concurred.