GEORGE F. DITMAN BOOT AND SHOE COMPANY, v. THE KEOKUK & WESTERN RAILWAY COMPANY, Appellant.

Carriers: Liability for Arrived Baggage. Heavy baggage arrived by train at about eight in the evening. The owner could not get it
1 without paying excess baggage charges. He made no attempt to that night, and before morning his trunks burned up with the depot. It was customary for travelers to leave their baggage at the depot,
2 overnight, and to close the depot soon after the arrival of said train. Sometimes, on surrender of checks and special requests, trunks were left out on the platform by the agent, thus enabling the owner to get them before morning. *Held,* that plaintiff was not bound to leave his

3 baggage on the platform and that it was for the jury to say whether or not plaintiff had, in waiting until the following morning to take his baggage, acted with reasonable diligence; though, ordinarily, a carrier's liability for baggage ends when it arrives at its destination, and a reasonable time is given the owner to remove it.

*Appeal from Keokuk Superior Court.*—Hon. Henry Bank, Jr., Judge.

. Friday, May 25, 1894.

R. B. Grant is the traveling agent of the plaintiff company. On the sixteenth day of December, 1890, he purchased a ticket on defendant's line of road from Memphis to Kahoka, both points being in the state of Missouri. Grant had with him as baggage two sample trunks. He arrived at Kahoka at 7:40 in the evening, and, without calling for his trunks, or attempting in any way to remove them, he proceeded to a hotel, and the trunks were placed in the depot, which was burned during the night; and this action is to recover for their value. The cause was tried to a jury that returned a verdict for the plaintiff, and from a judgment on the verdict the defendant appealed.—*Affirmed.*

*F. T. Hughes* and *John T. P. Powers* for appellant.

*James C. Davis* and *A. Hollingsworth* for appellee.

Granger, C. J.—The liability which plaintiff seeks to establish against the defendant is not that of a warehouseman, but that of a common carrier; and the contention of the appellant is that the neglect of the agent of plaintiff to remove the trunks on the night of his arrival, whereby they were, by the company, placed in the depot, changes its obligation from that of a common carrier to that of a warehouseman; while the plaintiff contends that the obligation of a common carrier ceased only after a reasonable time for their removal, and

Vol. 91 Ia—27

what would be a reasonable time depends upon circumstances and the custom and manner in which the company transacted its business in relation to such baggage at that particular station. Complaint is made of the following instruction, which will indicate the issue of fact presented: "(7) As stated in these instructions, the liability of a common carrier for the baggage of a passenger terminates as such, and its liability as a warehouseman commences, upon the expiration of such reasonable time, under all the circumstances of the case, after the arrival of such baggage at its place ot destination, as will enable the passenger, in the exercise of ordinary diligence, to receive and take charge of his baggage by himself or others for him. And in determining what is such reasonable time the jury should take into consideration all the circumstances shown by the evidence bearing upon that question; the general and usual custom or manner in which defendant transacted its business in relation to such baggage at the depot in question, in regard to the delivery of such baggage; the time in the evening when defendant, by its agent, usually closed the depot of defendant, and left it for the night, and especially the night or the evening in question; the time and opportunity which said R. B. Grant had for receiving said baggage from defendant at its depot or platform for the purpose of removing the same on the night in question." In the eighth instruction, the court said to the jury that, as a matter of fact, Grant did not, on the evening of his arrival, attempt to remove the baggage from the depot; and left it for the jury to find whether it was left for an unreasonable time, and said to the jury that, if it was, there could be no recovery. Appellant, speaking of parcels of baggage, says, in argument: "The duty of a railroad company as carrier in this country is to transport and deliver to the owner or consignee at its station, and the duty of such owner

or consignee to be there at the arrival of trains, ready to receive and take them away." From this, it will clearly be seen wherein it is claimed that this instruction is erroneous, as it permits the jury to find whether or not the leaving of the trunks overnight was an unreasonble time. The authorities are harmonious that the baggage of a passenger, on reaching its destination, must be called for in a reasonable time, or the liability of the company as an insurer ceases. 2 Redf. Law of R'y's, section 171. In the same section it is said: "And the reasonable time within which the owner must call for it is directly upon its arrival, making reasonable allowance caused by the crowded state of the depot at the time, and the lateness of the hour makes no difference if the baggage be put upon the platform." In *Railroad Co. v. Mahan*, 8 Bush. (Ky.) 184, the general rule is announced, and it is said: "What constitutes such reasonable time and opportunity is a mixed question of law and fact, necessarily dependent upon the peculiar surroundings of each particular case." That was a case where baggage arriving at half past eight in the evening, not called for, was burned in the depot that night. The company was held not liable.

In the opinion, importance is attached to the fact that no circumstances were shown, for which the company was responsible, rendering it impossible for the owner to remove the baggage on its arrival. In this case, it is averred in the petition that "it was the usual and ordinary custom, as between the defendant and the traveling public, and especially between defendant and said R. B. Grant, to permit baggage that arrived on the evening train to remain in said depot overnight;" and, further, "owing to the lateness of his arrival, the want of facilities to remove said baggage, and because defendant's agent did not keep the said depot open a sufficient length of time,

the plaintiff was entitled until the morning of the seventeenth as a reasonable time to remove said baggage." The rule of the instruction was directed to the issue formed upon these averments, and it will be seen that the facts are not those upon which the general rule, as we have stated it, rests. Mr. Grant, the agent, testified that he had been going to Kahoka for about twelve years with his sample trunks, on the defendant's road; and that in the winter time, in the month of December, in the evening, there are no facilities at the depot to remove baggage of the kind in question. He said: "As I have been able to observe, they always leave baggage of the character of my goods at the depot until the next morning. I know the customs and habits of the K. & W. R. R. Co. as to closing this depot after the departure of the train for the east. It is closed thirty or forty minutes after this western train gets in." "Did you ever attempt to get your baggage out after it arrived at the depot in the evening, during the last four or five years?" "Yes, sir." "Did you succeed?" "No, sir. The depot was closed. The agent was gone home, or somewhere else." The weight of the trunks was from three hundred and fifty to four hundred pounds, on which there was an extra charge for baggage, and a receipt or waybill given. The testimony of other traveling salesmen corroborates that of Mr. Grant as to not being able to get such baggage from the depot after 8 o'clock in the evening, and as to the custom of leaving it until morning. The testimony of other witnesses is substantially to the same effect. As we understand, before these trunks could be delivered, they must be weighed by the agent at Kahoka, and the weight and collection for excess charges be filled in the waybill surrendered by Grant on receiving his baggage, and the waybill be stamped by the agent. They were not to be delivered as baggage usually is, upon the surrender of a check held by a passenger. Other evidence on the

part of the defendant is to the effect that the depot was
open at such times, and the facilities for getting the
baggage good. The testimony is clearly such as to jus-
tify the instruction, and make the question of fact one
for the jury.

If the facts were found with the plaintiff, there can
be no doubt that the obligations of the company as a
common carrier would continue until a proper hour for
delivery in the morning. It is a case where the delay
is at the instance, and for the convenience of, the com-
pany. It is urged that it appears that, if the checks
had been given to the "bus driver," the baggage could
have been obtained that night. There is some tes-
timony to that effect, but, when all the testimony is
considered, it is a matter of doubt, unless special pains
were taken. A Mr. Ferguson, who was a hotel porter
at Kahoka at the time, was asked: "When was it usual
and customary to remove the baggage from the depot
at Kahoka that arrived on the eastern and western
bound trains the evening before?" "Why, the next
morning." "Did you have occasion to be at the Ka-
hoka depot in the evenings?" "Yes, sir." "Do you
know how soon after the passenger train went east that
depot was closed?" "Within ten or fifteen minutes
after, I presume. At times it was open late. * * *
Have had occasion to get baggage from Kahoka depot
at night, when requested. We had to go and notify
the agent and deliver the checks." "Notify him
what?" "That we wanted the baggage. The checks
would be taken off the trunks, and they would be left
standing out on the platform." "State whether or not
you have come down for baggage, and found the trunk
or baggage left out on the platform, and the depot
closed." "Yes, sir." That such a course of procedure
on the part of the company is not in accord with the
law under which its liability as a common carrier is to
cease is certain. No passenger is required to surrender

his checks, and have his baggage thus exposed. Under all the authorities, the agent must remain a reasonable time to deliver the baggage. The conclusion in this case is warranted that, because of a custom of the company to close its depot in so short a time after the departure of these evening trains, that draymen and others handling baggage did not go to them, and the custom obtaining of getting such baggage by special requests, and surrendering the checks, and having the baggage left out of the depot. No passenger was required to conform to such a regulation. These considerations indicate our views as to complaints as to the ninth and tenth instructions given by the court. The judgment is AFFIRMED.