### GRAVES v. FITCHBURG R. CO.

(Supreme Court, Appellate Division, Third Department.    May 4, 1898.)

1. CARRIERS—LIABILITY FOR LOSS OF BAGGAGE.
    A passenger checked his baggage to a station, with the intention of leaving it there over night.    On arriving, he saw his trunk unloaded from the train and taken into the depot, but did not claim it until the following morning. The trunk was locked up in the depot overnight, and its contents were stolen. Held, that the carrier was not an insurer of the trunk, and was liable only as an ordinary warehouseman, and, having exercised the care required of it as such, it was not liable for the loss.

2. SAME—DUTY OF PASSENGER.
    Where a passenger knew that the carrier's depot was usually closed soon after the time of his arrival, and he made no effort to remove his baggage therefrom, and did not ask that the station be kept open until he had had an opportunity to take it away, he cannot complain that, because of the closing of the depot, he had no opportunity to obtain it.
    Putnam and Herrick, JJ., dissenting.

Appeal from Rensselaer county court.

Action in justice's court by Collins M. Graves against the Fitchburg Railroad Company.    There was a judgment for plaintiff, and from a judgment of the county court affirming the justice's court judgment the defendant appeals.    Reversed.

The plaintiff was a passenger on the defendant's train, and arrived with his trunk at its station in Hoosick at about half past 7 o'clock in the evening.    He there left the train, and went to visit a friend about a mile and a half distant. He saw the trunk taken from the train at the time he left it, but made no effort to claim the same until the next morning, about 9 or 10 o'clock.    During the night the station house was entered by burglars, plaintiff's trunk broken open, and property contained therein taken, for the loss of which this action was brought in a justice's court.    The plaintiff recovered in that court.    The county court affirmed the judgment of the justice, and from such judgment of affirmance this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

T. F. Hamilton, for appellant.

Lansing & Holmes (John B. Holmes, of counsel), for respondent.

PARKER, P. J.    It is a well-settled rule of law that the liability of
a railroad company for the baggage of a passenger on its road contin-
ues to be that of a common carrier until the passenger has had a rea-
sonable opportunity to remove the same from its custody.    Dininny
v. Railroad Co., 49 N. Y. 546; Maxwell v. Gerard, 84 Hun, 537, 32
N. Y. Supp. 849. · The question is whether that reasonable oppor-
tunity had been furnished to the plaintiff in this case before the prop-
erty in question was stolen from the defendant.    It is argued that
when the plaintiff arrived at Hoosick there were no means present
whereby he could take with him his baggage when he left the station,
and that hence there was not a reasonable opportunity for him to then
receive it from the company, and that, inasmuch as the station was
closed in about 10 minutes after the train arrived, there was no reason-
able opportunity given him until the next morning.    Against this
argument it may be urged with considerable force that the common
carrier is under no obligation to provide means to remove baggage
from its station; that whatever delay occurs in procuring such means,
be it more or less, is a circumstance utterly disconnected with any of
its duties; that, if such means are lacking, it is not its fault, but an
inconvenience affecting the passenger only, and for which it should
not be compelled to continue its burdensome obligation as an insurer,
so long as it stands ready to at once deliver the property; that, if the
passenger is unable to then procure transportation to the point he
desires, it may reasonably be required to store his goods and assume
the liability of a warehouseman, but that neither its contract nor pub-
lic policy requires it to go any further as a common carrier.    Without,
however, deciding or discussing this broad claim, the question is pre-
sented in this case whether the passenger did in fact avail himself of
all his opportunities for removing his baggage within a reasonable
time.    The fact is that he checked his baggage to that station with
the deliberate intent of leaving it there all night.    He not only made
no effort to take it away that night, but it is very clear that he had no
use for it that night, and that it was much more convenient to leave
it than to take it, even if the means to do so had been ready at hand.
He says that he knew the station was usually closed in 10 minutes or
so after the train left, and that it would be no use for him to try and get
means of removal within that period.    But if he had gone to the sta-
tion agent, and demanded that he keep the station open, or be there at
a fixed time to deliver the baggage to those whom he could send to
remove it, how does he know that his demand would not have been
complied with?    Upon what theory can he say that he could not have
got the baggage after the expiration of 10 minutes, unless he had
made some sort of an effort to do so?    There is no evidence that he
could not, except the assumption arising from the fact that the station
was closed.    But when a passenger leaves a station, which he knows
is about to close, without making any effort to get his baggage, or any

reference whatever to it, we may not assume that, because the agent closes at the usual hour, he would have refused to keep open a reasonable time to allow the baggage to be removed. Surely, when a passenger arrives at a station with his baggage, and the carrier is then ready to deliver it to him, it has, prima facie, performed its full duty as a carrier; and if the passenger, knowing that it is the custom to close the station for the night on the departure of that train, chooses to go away without demanding his baggage, or making any arrangement regarding it, the carrier may well assume that he voluntarily elects to leave it overnight. If the passenger's reason for not removing it is that he has not then the means of so doing, he should call the carrier's attention to the situation, and demand that further opportunity be given him. If, notwithstanding such a demand, the station is closed, a very different case would be presented. Or if a passenger ignorant of the custom should leave the station, and, having procured means of removal within a reasonable time, should return and find the station closed, a different question would be presented. But in this case it is clear that the passenger, knowing the situation, purposely left his trunk there overnight for his own convenience, and, by his conduct, substantially said to the carrier, "Take care of that trunk for me till I call for it." "The plaintiff seeks to hold the defendant to a strict liability as an insurer of the goods. Asking that so rigid a rule be applied to the defendant, it is just that the plaintiff, in turn, be held to prompt and diligent action." "It is the duty of the carrier to give notice of arrival. It is the duty of the consignee at once, and with diligence, to act upon this notice, and to seek delivery, and to continue until delivery is complete." Hedges v. Railroad Co., 49 N. Y. 223. Applying the principle above cited to this case, the plaintiff has clearly fallen far short of his obligations in order to charge the defendant as an insurer of his trunk. It does not appear but that there were the usual baggage wagons at the station, which he could have engaged to remove his trunk. It does not appear but that the agent would have kept the station open, had it been necessary to send back for the trunk. On the contrary, the plaintiff objected to evidence being given tending to show the agent's readiness so to do. In short, it does not appear that the plaintiff was deprived of a reasonable opportunity to get his trunk within a short time after his arrival, and hence we must consider this case as if he had voluntarily left it there all night. Under such circumstances, it is clear that he can enforce no liability against defendant, other than that of a warehouseman. Roth v. Railroad Co., 34 N. Y. 548. An examination of the evidence shows that no negligence was shown against defendant sufficient to hold it responsible as a warehouseman merely, and I do not understand that such was the ground of the recovery below. It was evidently tried and decided upon the other theory. The trunk was locked up in the station in the usual manner, and had such protection as was ordinarily accorded by prudent men in that village to their property, and I therefore think the judgment cannot be sustained on that ground. Laporte v. Express Co., 23 App. Div. 267, 271, 48 N. Y. Supp. 292.

My conclusion is that the judgment of the county court and of the

justice's court should be reversed, with costs.   All concur, except PUTNAM and HERRICK, JJ., dissenting.

PUTNAM, J. (dissenting).   The impression I entertained on the argument of this appeal has been changed by a careful examination of the return of the justice, and consideration of the questions involved. The plaintiff, on Thursday, the 28th day of January, 1897, with his trunk, took passage on the defendant's cars at Bennington, Vt., for Hoosick, N. Y.   He reached the latter place at a quarter of 7 in the evening.   The plaintiff was on his way to visit a Mr. Quackenbush, who lived a mile and a half from the railroad station, and depended upon the latter to take him and his baggage from the depot. When he arrived, he saw his trunk unloaded, but did not present his check, or demand it; going immediately with a companion to a one-horse sleigh in waiting, sent by Mr. Quackenbush, to the residence of the latter.   He sent the coachman for the trunk the next morning between 9 and 10, and afterwards called for it himself, but did not succeed in obtaining it until Saturday.   It had been broken open, and articles, the value of which is not disputed, taken therefrom.   The principles of law applicable to the case are well settled.   The defendant, as a common carrier, was liable to the plaintiff from the time the trunk was shipped at Bennington until it reached Hoosick, and for such time thereafter as should afford the plaintiff a reasonable opportunity to remove it.   Roth v. Railroad Co., 34 N. Y. 548; Fenner v. Railroad Co., 44 N. Y. 505; Mortland v. Railroad Co., 81 Hun, 473, 30 N. Y. Supp. 1021.   What was a reasonable time depended upon the circumstances of the case.   Burgevin v. Railroad Co., 69 Hun, 479, 23 N. Y. Supp. 415; Burnell v. Railroad Co., 45 N. Y. 184. But, where there is no dispute as to the facts, the question as to what constitutes reasonable time for a passenger to remove his trunk is a question of law, for the court.   Hedges v. Railroad Co., 49 N. Y. 223.   The question before us is whether or not the plaintiff demanded his trunk within a reasonable time after its arrival at Hoosick. He was called as a witness in his own behalf, and to the question asked him by his counsel, "Was it convenient for you to take your trunk that night?" he answered, "No, sir; that is the reason I didn't take it."   The following testimony was elicited from him by the defendant:

"Q. Did you know that shortly after the arrival of that train the station closed up?   A. I did.   I knew.   I had been told so.  *  *  *  Q. Then you didn't take the trunk to Mr. Quackenbush's that night?   A. No, sir.   Q. And didn't intend to, did you?   A. No; I didn't expect to.  *  *  *  Q. The only reason you didn't ask for it was, it was inconvenient?   A. I couldn't take it with me."

It was shown that on the night in question the station agent, according to his usual custom, immediately after the arrival of the train on which the plaintiff was a passenger, closed and locked up the depot in which the plaintiff's baggage was placed, and it remained thus closed until the next morning.   It was thus closed within 10 minutes after the arrival of the train.   It must be remembered that this was a country station.   It does not appear that there was any public conveyance, cart or sleigh, at the depot, by which the

plaintiff could have removed his trunk immediately. Had he, on his arrival at the house of Mr. Quackenbush, at once sent a conveyance for his trunk, it would not be claimed that his demand was not made within a reasonable time; but it was shown that he knew the custom of the company to close the depot for the night immediately after the arrival of the train on which he came, and hence he knew that to make such an attempt that night was useless. He was not called upon (the station being closed for the night) to institute a search for the station agent for the purpose of obtaining his trunk. The plaintiff therefore was compelled to take his trunk immediately on his arrival at Hoosick, or he could not remove it that night. I think the defendant did not afford the plaintiff a reasonable time in which to remove his baggage on the evening of its arrival. It was a country station. It did not appear that there was any public conveyance there by which the baggage could have been taken away. The plaintiff required more time than he would, had it been a city depot. The defendant should have kept its station open for a reasonable time after the arrival of the train, so as to afford passengers an opportunity to send for their baggage. The statement of the plaintiff that he did not take the trunk that night because it was not convenient; that he did not expect to take it that evening,—must be considered in connection with his testimony that he could not take the trunk in the sleigh sent by Mr. Quackenbush, and with his knowledge that the station would close immediately after he left, thus affording him no opportunity to send for the baggage. It was not convenient to—he did not expect to—take the trunk that night, because he knew he could not take it in the sleigh sent for him, and would not have time to send for it before the station was closed for the night. It will be seen that the facts shown in this case differ from those considered in Roth v. Railroad Co., Fenner v. Railroad Co., and Mortland v. Railroad Co., supra. In those cases the passenger or consignee had ample time and opportunity to remove his property, while here the only opportunity to remove the trunk was immediately on the arrival of the train. It has not been held that a passenger on a railroad train, arriving at a depot with his trunk, must instantly remove his baggage, but he may have a reasonable time to do so; and what is a reasonable time depends on the circumstances of each case. In this case the plaintiff could not obtain his trunk on the evening of his arrival unless he took it away immediately. No time was afforded him to obtain a conveyance to remove it. I think that, under all the circumstances, he was not given a reasonable time to take away his baggage on the evening of its arrival at Hoosick, and that a demand made the next morning was in time. The judgment should be affirmed, with costs.

HERRICK, J., concurs.