COLLINS M. GRAVES, Respondent, *v.* THE FITCHBURG RAILROAD COMPANY, Appellant.

*Railroad — nature of its liability for a trunk which a passenger leaves at its station over night.*

A passenger on a railroad train, upon arriving at the station of his destination at about half-past seven o'clock in the evening, left it to visit a friend about a mile and a half distant, after seeing his trunk taken from the train. He made no effort to claim his trunk until the next morning, when it was found that during the night it had been broken open by burglars and property taken therefrom.

*Held,* that the railroad company's liability for the trunk was that of a warehouse-man, and not that of a common carrier;

That the fact that the station closed about ten minutes after the arrival of the train, in the absence of proof that the passenger made any request to the station agent to keep the station open or to be there at a fixed time to deliver the baggage, did not change the railroad company's liability.

PUTNAM and HERRICK, JJ., dissented.

APPEAL by the defendant, The Fitchburg Railroad Company, from a judgment of the County Court of Rensselaer county in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 23d day of December, 1897, affirming a judgment rendered by the Justice's Court of the city of Troy.

The plaintiff was a passenger on the defendant's train and arrived with his trunk at its station in Hoosick at about half-past seven o'clock in the evening. He there left the train and went to visit a friend about a mile and a half distant. He saw the trunk taken from the train at the time he left it, but made no effort to claim the same until the next morning about nine or ten o'clock. During the night the station house was entered by burglars, plaintiff's trunk broken open and property contained therein taken, for the loss of which this action was brought in a Justice's Court. The plaintiff recovered in that court. The County Court affirmed the judgment of the justice, and from such judgment of affirmance this appeal is taken.

*T. F. Hamilton,* for the appellant.

*Lansing & Holmes,* for the respondent.

PARKER, P. J. :

It is a well-settled rule of law that the liability of a railroad company for the baggage of a passenger on its road continues to be that of a common carrier until the passenger has had a reasonable opportunity to remove the same from its custody. (*Dininny* v. *N. Y. & N. H. R. R. Co.*, 49 N. Y. 546; *Maxwell* v. *Gerard*, 84 Hun, 537.)

The question is whether that reasonable opportunity had been furnished to the plaintiff in this case before the property in question was stolen from the defendant.

It is argued that when the plaintiff arrived at Hoosick there were no means present whereby he could take with him his baggage when he left the station, and that, hence, there was not a reasonable opportunity for him to then receive it from the company; and that, inasmuch as the station was closed in about ten minutes after the train arrived, there was no reasonable opportunity given until the next morning.

Against this argument it may be urged with considerable force that the common carrier is under no obligation to provide means to remove baggage from its station; that whatever delay occurs in procuring such means, be it more or less, is a circumstance utterly disconnected with any of its duties; that if such means are lacking, it is not the fault of the common carrier, but an inconvenience affecting the passenger only and for which the common carrier should not be compelled to continue its burdensome obligation as an insurer so long as it stands ready to at once deliver the property; that if the passenger is unable to then procure transportation to the point he desires the common carrier may reasonably be required to store his goods and assume the liability of a warehouseman, but that neither its contract nor public policy requires it to go any further as common carrier.

Without, however, deciding or discussing this broad claim, the question is presented in this case whether the passenger did, in fact, avail himself of all his opportunities for removing his baggage within a reasonable time. The fact is that he checked his baggage to that station with the deliberate intent of leaving it there all night. He not only made no effort to take it away that night, but it is very clear that he had no use for it that night, and that it was much more convenient to leave it than to take it, even if the means to do so had been ready at hand.

He says that he knew the station was usually closed in ten minutes or so after the train left, and that it would be no use for him to try and get means of removal within that period.   But if he had gone to the station agent and demanded that he keep the station open, or that the station agent be there at a fixed time to deliver the baggage to those whom he could send to remove it, how does he know that his demand would not have been complied with?   Upon what theory can he say that he could not have got the baggage after the expiration of ten minutes, unless he had made some sort of an effort to do so.   There is no evidence that he could not, except the assumption arising from the fact that the station was closed.   But when a passenger leaves a station which he knows is about to close, without making any effort to get his baggage or any reference whatever to it, we may not assume that because the agent closes at the usual hour he would have refused to keep open a reasonable time to allow the baggage to be removed.

Surely when a passenger arrives at a station with his baggage and the carrier is then ready to deliver it to him, it has *prima facie* performed its full duty as a carrier; and if the passenger, knowing that it is the custom to close the station for the night, on the departure of that train, chooses to go away without demanding his baggage or making any arrangement regarding it, the carrier may well assume that he voluntarily elects to leave it over night.   If the passenger's reason for not removing it is that he has not then the means of so doing, he should call the carrier's attention to the situation and demand that further opportunity be given him.   If notwithstanding such a demand the station is closed, a very different case would be presented.   Or if a passenger, ignorant of the custom, should leave the station and having procured means of removal within a reasonable time should return and find the station closed, a different question would be presented.   But in this case it is clear that the passenger, knowing the situation, purposely left his trunk there over night, for his own convenience, and by his conduct substantially said to the carrier : Take care of that trunk for me till I call for it.

"The plaintiffs seek to hold the defendant to a strict liability as an insurer of the goods.   Asking that so rigid a rule be applied to

the defendant, it is just that the plaintiffs in turn be held to prompt and diligent action. * * * It is the duty of the carrier to give notice of arrival; it is the duty of the consignee at once and with diligence to act upon this notice and to seek delivery, and to *continue* until delivery is complete." (*Hedges* v. *Hudson R. R. R. Co.*, 49 N. Y. 223.)

Applying the principle above cited to this case, the plaintiff has clearly fallen far short of his obligations in order to charge the defendant as an insurer of his trunk. It does not appear but that there were the usual baggage wagons at the station which he could have engaged to remove his trunk. It does not appear but that the agent would have kept the station open had it been necessary to send back for the trunk. On the contrary, the plaintiff objected to evidence being given tending to show the agent's readiness so to do. In short, it does not appear that the plaintiff was deprived of a reasonable opportunity to get his trunk within a short time after his arrival, and, hence, we must consider this case as if he had voluntarily left it there all night. Under such circumstances it is clear that he can enforce no liability against defendant other than that of a warehouseman. (*Roth* v. *Buffalo & State Line R. R. Co.*, 34 N. Y. 548.)

An examination of the evidence shows that no negligence was shown against defendant sufficient to hold it responsible as a warehouseman merely; and I do not understand that such was the ground of the recovery below. It was evidently tried and decided upon the other theory. The trunk was locked up in the station in the usual manner, and had such protection as was ordinarily accorded by prudent men in that village to their property, and I, therefore, think the judgment cannot be sustained on that ground. (*Laporte* v. *Wells, Fargo & Co.'s Express*, 23 App. Div. 267, 271.)

My conclusion is that the judgment of the County Court and of the Justice's Court should be reversed, with costs.

All concurred, except PUTNAM and HERRICK, JJ., dissenting.

PUTNAM, J. (dissenting):

The impression I entertained on the argument of this appeal has been changed by a careful examination of the return of the justice and consideration of the questions involved.

The plaintiff, on Thursday, the 28th day of January, 1897, with his trunk, took passage on the defendant's cars at Bennington, Vt., for Hoosick, N. Y. He reached the latter place at a quarter of seven in the evening. The plaintiff was on his way to visit a Mr. Quackenbush, who lived a mile and a half from the railroad station, and depended upon the latter to take him and his baggage from the depot. When he arrived he saw his trunk unloaded, but did not present his check or demand it, going immediately with a companion to a one-horse sleigh in waiting, sent by Mr. Quackenbush, to the residence of the latter. He sent the coachman for the trunk the next morning between nine and ten, and afterwards called for it himself, but did not succeed in obtaining it until Saturday. It had been broken open and articles, the value of which is not disputed, taken therefrom.

The principles of law applicable to the case are well settled. The defendant, as a common carrier, was liable as such from the time the trunk was shipped at Bennington until it reached Hoosick, and for such time thereafter as should afford the plaintiff a reasonable opportunity to remove it. (*Roth* v. *Buffalo & State Line R. R. Co.*, 34 N. Y. 548; *Fenner* v. *Buffalo & State Line R. R. Co.*, 44 id. 505; *Mortland* v. *Philadelphia & R. R. R. Co.*, 81 Hun, 473.)

What was a reasonable time depended upon the circumstances of the case. (*Burgevin* v. *N. Y. C. & H. R. R. R. Co.*, 69 Hun, 479; *Burnell* v. *The New York Central R. R. Co.*, 45 N. Y. 184.)

If there was no dispute as to the facts, the question was one of law for the court. (*Hedges* v. *Hudson River R. R. Co.*, 49 N. Y. 223.) But a question of fact arose, although there was no conflict in the evidence, if different inferences could be drawn therefrom. The plaintiff reached Hoosick in the evening; it was a country station; he was met by a one-horse sleigh sent by Quackenbush, in which he was taken to the house of the latter. It appeared that he could not remove his trunk in that sleigh, and it is not claimed that there was any conveyance at the station in which he could have taken it away. According to the custom prevailing at that place, of which the plaintiff was shown to have been aware, the station agent, immediately after the arrival of the train, closed and locked the station for the night, and departed.

It has not been held that if a passenger arriving at a railroad station fails to take his package *immediately*, the liability of the carrier as such ceases. Such liability continues until the passenger has had a *reasonable time* to remove his package. What is a reasonable time depends upon the circumstances. The justice was authorized in this case to find that, unless the plaintiff removed his trunk immediately on the arrival of the train, he could not have obtained it that night; that he could not have sent a conveyance for it after his arrival at Mr. Quackenbush's, a mile and a half distant, or have procured such conveyance from the neighboring hotel in time to obtain the trunk before the station closed. Hence, the justice properly held that the defendant did not afford the plaintiff a reasonable time to remove his trunk on the night of its arrival, and that the demand the next morning was sufficient.

The plaintiff was not compelled to go through with the formality of sending a conveyance and making a demand for the trunk at a time when he knew the station would be closed, or to make a search for the station agent after he had locked up the station for the night, or to solicit the agent to keep the station open beyond the usual time, so that he could obtain his baggage that night.

The statement of the plaintiff as a witness that he did not take the trunk that night because it was not convenient; that he did not expect to take it that evening, must be considered in connection with his testimony that he could not take it in the sleigh sent by Mr. Quackenbush, and with his knowledge that the station would close immediately after he left, thus affording him no opportunity to send for the baggage. What the witness meant by those statements was a question for the justice to determine, and he could properly hold that the witness used the expressions referred to in the following sense: It was not convenient to — he did not expect to — take the trunk that night because he knew he could not take it in the sleigh sent for him, and would not have time to obtain a conveyance before the station was closed for the night.

It will be seen that the facts in this case differ from those considered in *Roth* v. *Buffalo & State Line R. R. Co.*, *Fenner* v. *Buffalo & State Line R. R. Co.* and *Mortland* v. *Philadelphia & R. R. R. Co.* (*supra*). In those cases the passenger or consignee had ample time and opportunity to remove his property; while

here the only opportunity to remove the trunk was immediately on the arrival of the train.

. I think that, under all the circumstances, the plaintiff was not given a reasonable time to take away his baggage on the evening of its arrival at Hoosick and that a demand made the next morning was in time.

The judgment should be affirmed, with costs.

HERRICK, J., concurred.

Judgment of the County Court and of the justice's reversed, with costs.