[No. 7814.]

DENVER & RIO GRANDE RAILROAD COMPANY v. DOYLE.

1. PASSENGER CARRIER—*Baggage—Liability of Carrier.*  So long as a railway company has charge of the baggage of the passenger as a common carrier, it is liable as an insurer.  It is its duty to have the baggage ready for delivery within a reasonable time after it reaches destination.  (332)

If the passenger fails to call for it within a reasonable time it is the duty of the carrier to store it in some suitable place; thereafter it is liable for its loss, only in case it is convicted of negligence occasioning the loss.  (332)

On the afternoon of August 15th a valise arrived at a day station where there were few arrivals, and the station house was closed during the night.  The valise not being called for was stored in the baggage-room of the station, a substantial building, the doors and windows of which were equipped with ordinary locks, all which were securely fastened on the occasion in question.  During the night of the 16th, the building was entered by burglars, and the valise carried away.  No sufficient excuse was shown for the passenger's failure to call for the baggage before the loss.  *Held* the railway company were not liable.  (331, 333)

2. ——*Reasonable Time.*  The time within which the passenger should call for his baggage is measured from its arrival, not that of the passenger, at destination.  (332)

3. ——*For the Court.*  Where the facts are not disputed what constitutes reasonable time is for the court.  (332)

4. ——*Duty of Passenger—Excuse for Delay.*  Ordinarily it is presumed that the passenger and his baggage will go by the same train.  If he travels by a later train and for that reason is delayed

beyond a reasonable time in removing his baggage, it seems he must show a sufficient reason for his conduct. (331)

A lady in feeble health, intending to travel at a season when, as she must have been aware, she might have difficulty in procuring accommodation upon the sleeper, went to the station only a few minutes before train-time. She first checked her baggage, and then applied for a berth in the sleeper. Not being able to secure it she postponed her journey, permitting her baggage to go forward, upon the train upon which she had checked it. The baggage arrived at destination on the afternoon of the 15th, the lady not until the 17th. In the meantime, without fault of the railway company, the baggage was stolen. *Held* she had failed to excuse her omission to call for the baggage in reasonable time. (333, 334)

*Error to Mesa County Court.*—Hon. WALTER S. SULLIVAN, Judge.

Mr. GEORGE P. STEELE, Mr. E. N. CLARK and Mr. R. G. LUCAS, for plaintiff in error.

Mr. HENRY R. RHONE and Mr. J. H. BURKHARDT, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

This action for damages is on account of the failure of the railroad company to produce and deliver a suitcase when it was called for, which it, as a common carrier had received as baggage for transportation.

1. The facts are admitted, and there is no conflict in the testimony. Mary M. Doyle came to Denver August 9, 1911 from her home at Clifton, Colorado, where she had purchased a round trip ticket over the D. & R. G. Railroad. She started to return on the evening of the 14th and upon arriving at the Union Depot, first checked her suitcase to Clifton, and then went to the Pullman office to secure a sleeper berth, which she was unable to do, for the reason that they were all sold. Feeling

that she was physically unable to travel at night without Pullman accommodations, she remained in Denver without informing the company that she did not intend to travel on the same train with her baggage, and the next morning, the 15th, went to Colorado Springs where she endeavored to secure a berth on the night train, and was again informed that they were all sold. She remained at Colorado Springs until the morning of the 16th, secured a sleeper and left that night, arriving at Clifton on the afternoon of the 17th, where she called for her baggage which the company failed to deliver, and later she was informed by the agent, that the depot had been burglarized the night before and her suitcase stolen.

In the court below, plaintiff tried the case upon the theory that under these facts, the company was accountable as a common carrier and insurer of the baggage, without proof of negligence, and rested without attempting to prove negligence. Defendant then interposed a motion for a non-suit upon the ground that it was not liable as an insurer or common carrier; that it was only accountable to the plaintiff as a bailee or warehouseman, and no negligence having been shown, plaintiff could not recover. This motion was overruled. Defendant then introduced its evidence, from which it appeared that Clifton was a small day station, the agent remaining on duty from 8 A. M. to 8 P. M.; that the suitcase in question arrived on the afternoon of the 15th, and being unclaimed, it was stored in the baggage room used for that purpose; that on the night of the 16th, the depot was burglarized and the suitcase, with other property, stolen; that the depot was a substantial building with doors and windows equipped with ordinary locks and fastenings; that when the agent left at 8 o'clock on the night of the 16th, the doors and windows were securely locked and fastened; that the next morning it was discovered that an

entrance had been forced through a window and the building burglarized.

The court, in its instructions, after stating the issues, told the jury that they should determine from the evidence and circumstances whether plaintiff called for her baggage within a reasonable time after it arrived at Clifton; that what constituted a reasonable time for her to remove it after it arrived, was a question of fact which should be determined by the jury, and in that connection that they might consider whether her failure to demand her baggage sooner was because of the inability or failure of the company to furnish her proper and suitable accommodations for travel, considering her state of health at the time; that the liability of the company terminated as a common carrier after her baggage arrived at Clifton, and a reasonable time had elapsed to remove it; that if she failed to remove her suitcase after a reasonable time after it arrived, the liability of the company shifted or changed from that of a common carrier to that of a warehouseman; that as a warehouseman, the company was only bound to use that degree of care and attention which a man of ordinary prudence and diligence would use in reference to the goods, under the circumstances, if they were his own, and if the company used such reasonable diligence in storing and caring for the goods, it would not be liable in case of loss by burglary; that as a warehouseman, it was its duty to store the baggage in a room reasonably safe and secure, used for that purpose; that where a railroad company places uncalled for baggage in its store-room where it is its custom to place uncalled for baggage, and such room appears to be reasonably secure for its safe keeping, the railroad company will not be liable unless guilty of negligence which caused the loss, and if they found for plaintiff, the measure of damages would be the value,

for use by the plaintiff, of the property lost, at the time and place of its loss, together with legal interest thereon from that date, all damages having been waived except those coming within the above rule.

2. The undisputed testimony shows: August 14, 1911, plaintiff at the Denver Union Depot, checked her suitcase to Clifton, where it arrived August 15th, at 1:45 P. M.; it was uncalled for on its arrival, and the agent placed it in the baggage room of the depot; during the night of August 16th, the depot was burglarized and the suitcase, with other articles, stolen; August 17th, plaintiff arrived at Clifton at 1:10 P. M., and called for the baggage, which the company failed to deliver, because it had been stolen; that the station was a substantial building, and no negligence was shown in caring for the baggage, which occasioned its loss. Plaintiff tried the case upon the theory of the company's liability as a common carrier and insurer. The theory of the defendant was that its liability as a common carrier terminated long before plaintiff called for the baggage, and had changed or shifted to that of a bailee or warehouseman before the property was stolen, and that it was only liable as a warehouseman upon proof of negligence which caused the loss.

3. Plaintiff's railroad fare covered transportation for herself and baggage to Clifton, and ordinarily it is presumed that baggage and passenger will go by the same train, and that the baggage will be called for within a reasonable time after the arrival at its destination.— *Marshall v. P., O. & R. R. Co.*, 126 Mich. 45, 85 N. W. 242, 55 L. R. A. 650; *Blumenthal v. R. R. Co.*, 79 Me. 550, 11 Atl. 605; *Wilson v. G. T. Ry.*, 56 Me. 60, 96 Am. Dec. 435.

4. While the company had charge of the baggage as a common carrier, it was an insurer of the property

and must pay for its value if it failed to deliver it while held in this capacity. It was the duty of the company to have the baggage ready for delivery within a reasonable time after it reached its destination, and it was the duty of the plaintiff to take it away within a reasonable time. If the baggage remained uncalled for, it was the duty of the defendant to store it in the baggage room at the station or in some other suitable place, and if plaintiff failed to take it away within a reasonable time after its arrival, the liability of the company as a common carrier and insurer changed or shifted to that of a bailee or warehouseman: It then held the property in storage; its liability as an insurer or common carrier no longer existed, and in case of its loss, plaintiff could only recover against the company as a warehouseman, upon proof that its negligence caused the loss.—4 Elliott on Railroads, (2nd ed.) § 1659; 3 Hutchinson on Carriers, (3rd ed.) §§ 1285 et seq.; 2 Redfield on Railroads, § 171; 6 Cyc. 672.

5. A reasonable time means sufficient time within reason to remove baggage after it, not the passenger, arrives. Where the facts are not disputed, what constitutes a reasonable time for a passenger to remove his baggage after arriving at its destination, is a question of law which the court must determine.—*D. & R. G. Co. v. Peterson,* 30 Colo. 77-87, 69 Pac. 578, 97 Am. St. Rep. 76; *Chicago Ry. Co. v. Boyce,* 73 Ill. 510, 24 Am. Rep. 268; *Schnitzmeyer v. Ill. C. R. R. Co.,* 147 Ill. App. 101; *K. C. Co. v. Patten,* 3 Kan. App. 338, 45 Pac. 108; *Louisville Co. v. Mahan,* 8 Bush (71 Ky.) 184; *Graves. v. Fitchburg Co.,* 29 App. Div. 591, 51 N. Y. Supp. 636; *Ouimit v. Henshaw,* 35 Vt. 605, 84 Am. Dec. 646; *Chicago Co. v. Addizoat,* 17 Ill. App. 632; *Galveston Co. v. Smith,* 81 Tex. 479, 17 S. W. 133; *Kahn v. Ry. Co.,* 115 N. C. 638, 20 S. E. 169; *Ditman Co. v. K. & W. Ry. Co.,* 91 Iowa, 416, 59 N. W. 257, 51 Am. St. Rep. 352.

6. The court left the jury to determine from all the admitted facts and circumstances, whether plaintiff called for her baggage within a reasonable time, and whether the liability of the company had shifted from that of a common carrier to that of a warehouseman. This was error. Plaintiff's baggage arrived at 1:45 P. M., on the 15th and remained in the baggage room until the night of the 16th without being called for, and it was the duty of the court to have held as a matter of law, that the baggage was not demanded within a reasonable time after it arrived.

Plaintiff could not recover against the company as a common carrier or insurer of the baggage as a matter of law. She did not demand or take it away within a reasonable time after it arrived, and she could not recover against the warehouseman, because there was no proof of negligence.

7. Plaintiff attempted to show, as a special circumstance excusing her from removing the baggage on the afternoon of the day it arrived; that she endeavored to, but could not get a sleeper until the night of the 16th, and did not feel able to travel without one. In this way she sought to extend the reasonable time to remove the baggage after it arrived at Clifton. If plaintiff had used ordinary care, thoughfuless and prudence, it must have occurred to her that if she waited until a few minutes before train time, she might have difficulty at that season of the year in securing a berth. Without making any inquiry or knowing whether or not she could procure a berth, she first went to the baggage room and checked her suitcase, expecting and intending to take the same train upon which it would go. Learning upon inquiry that she could not get a berth, she decided not to take that train, but to wait until she could secure sleeper accommodations. She allowed her baggage to go on, and

it reached its destination two days in advance of her arrival, when she could easily have checked it for the train on which she was to travel. Under such circumstances, all the company could do was to store it in its baggage room on its arrival. There was no delinquency on the part of the company in transporting either plaintiff or her baggage which would excuse her for not calling for and removing it without delay upon its arrival, or which would extend the reasonable time for its removal after it arrived. It was the fault of the passenger that the baggage was not called for and delivered upon its arrival.

By motion for a non-suit; by requested instructions; by a request for a directed verdict; and by motion for a new trial, the court was given ample opportunity to have disposed of the case according to law. It not having done so, the judgment is reversed, and the cause remanded with directions to dismiss the action.

*Reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.