LEVANT AMERICAN COMMERCIAL Co., INC., Respondent, v.
W. WELLS & Co., INC., Appellant.

First Department, February 7, 1919.

Sale — action for breach of contract to deliver goods — provision that
deliveries shall be made at plaintiff's option — date of breach
of contract — notice to deliver — reasonable time — direction of
verdict — conflict of testimony as to market value — evidence —
opinion as to market value — cross-examination.

Where a contract for the sale and delivery of merchandise provided for
delivery in part or in whole at the buyer's option at any time not later
than a certain date and the buyer notified the seller to deliver the goods
for shipment on a certain vessel which was to sail at a day within the
time set for delivery, but the seller failed to make delivery before the
vessel sailed, the date of the breach of contract was the date of sailing
and the notice given by the buyer was reasonable as a matter of law when
given fifteen days before the vessel sailed.

A letter written by the seller after the buyer's notice to deliver which
merely stated that delivery was difficult under the traffic conditions
and suggesting that the plaintiff make shipping arrangements for a later
date and asking for a reply, did not constitute a refusal to deliver so as
to set the date for breach of contract, for notwithstanding the letter the
seller might have fulfilled its contract by delivering at any time before
the vessel sailed.

The seller's agreement to deliver " at any time " required the buyer to
give reasonable notice to deliver and what constituted reasonable notice
is a question of law, there being no conflict as to facts

Opinions of witnesses offered by the defendant as to whether the notice to
deliver was made within a reasonable time were properly excluded.

However, a judgment for the plaintiff on a directed verdict for breach of
contract cannot stand where there was a conflict in testimony as to the
market value of the goods at the date of breach of contract, proper
exception having been taken. The fair market value of the goods on
the day in question was for the jury.

The court erred in refusing to permit the defendant to cross-examine the
plaintiff's witnesses as to the market- value of the goods on any other
day than that on which the breach of contract occurred, there having
been no sales of such merchandise on that day.

APPEAL by the defendant, W. Wells & Co., Inc., from a
judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the

22d day of April, 1918, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Harold R. Medina,* for the appellant.

*Henry A. Rubino* of counsel [*Finis E. Montgomery* with him on the brief], for the respondent.

Shearn, J.:

This is an appeal by defendant from a judgment for $13,778.95 entered upon a directed verdict.

The action was brought for breach of a contract by which defendant agreed to sell to the plaintiff 100 tons of sulphate of copper. The contract, which was dated September 27, 1916, contained the following clause governing delivery: " Delivery — partially or in whole, buyers option, at any time not later than December 31st, 1916." On November 10, 1916, plaintiff wrote defendant stating that there was a possibility of plaintiff's making a shipment of the 100 tons on a ship scheduled to sail on or about November twenty-fifth and, therefore, " we request that you have goods ready for prompt delivery as per our contract." Defendant replied on November fourteenth that " Mr. Dimon is arranging matters with you concerning shipments." On the same day, November fourteenth, plaintiff wrote defendant inclosing shipping permit for the 100 tons to be delivered on or before November twenty-second to the steamship named in the letter of November tenth, and called for delivery. On November eighteenth the defendant replied by letter, excluded over appellant's objection, claiming that the call for deliveries was " a rather short notice and we do not think that we can succeed in getting shipments from the West, under the present traffic conditions, to New York at the time stated," and suggested that the plaintiff make shipping arrangements for the month of December and asked for a reply. No reply was sent and this action was brought. The matters discussed on the appeal relate mainly to ascertaining the date of the breach of the contract and fixing the measure of damages. The court held that the date of the breach was November twenty-

second, the date on which the steamer sailed, and that the notice given by the plaintiff was reasonable as a matter of law. In both respects the court was right, in my opinion. The letter of November eighteenth above referred to, which was excluded, did not show a breach. It was merely a mild protest and expressed the desire to negotiate. It did not constitute a refusal to deliver; the defendant, notwithstanding the letter, might have filled its contract by delivering at any time up to the sailing of the vessel. That was the date of the breach and the day on which to fix the damages.

As to the reasonableness of the notice: Plaintiff claims that, as the defendant agreed to deliver " at any time," this did not require a reasonable notice. We cannot agree with this, for if logically carried out an hour's notice would be sufficient. Any such meaning is too unreasonable to import into a commercial contract, which should be interpreted in the light of reasonableness and fair dealing. When the defendant undertook to deliver at any time after notice, this meant any time after reasonable notice. What constituted reasonable notice was a question of law, there being no conflict of facts. (*Roth* v. *Buffalo & State Line R. R. Co.*, 34 N. Y. 548, 553.) The defendant sought to introduce in evidence the opinions of witnesses as to whether the time was reasonable, but of course such evidence was properly excluded. It also made an offer to prove that under the conditions prevailing, the notice was unreasonable. It is unsatisfactory as a rule to decide cases upon offers of proof and the court was over-indulgent in entertaining an offer so vaguely expressed. It seems, however, that what the defendant intended to show was that the material was in the West and freight conditions were such that delivery would necessarily be delayed. Such proof would not bear upon the reasonableness of the notice unless it were shown that the parties both understood, when the contract was made, that the sulphate was in the West and that it had to be shipped to New York, and that they contracted with full knowledge of these conditions. Nothing of this sort was shown. For aught that appeared to the contrary, the sulphate might have been in New York at the time the contract was made. The defendant had more than a week's notice and this was, as the court held, a reasonable notice under the terms of this contract.

The judgment cannot stand, however, because there was a conflict of testimony as to the market value of the sulphate on November twenty-second. ·Plaintiff's witnesses fixed it at fifteen cents a pound; but the jury would have been warranted in finding from the testimony of the defendant's witnesses that the market price was at least one-half cent a pound less. As there was a total of 224,000 pounds involved, the difference was material. The difference was called to the attention of the court although defendant's counsel did not make much point of it. Nevertheless, the defendant's counsel excepted to the direction of a verdict. There being a conflict of testimony, defendant was entitled to have the jury determine what in fact was the fair market value on the day in question. This is peculiarly so in this case, where it was not shown that there was any sale of sulphate on the day in question, plaintiff's evidence being largely based upon a quotation obtained from the Nichols Copper Company which, while it controlled eighty per cent of the market, was not the only seller of copper sulphate. In this connection we think that the learned trial justice unduly restricted the defendant's right of cross-examination, in refusing to permit the defendant to make any inquiries of the plaintiff's experts concerning the market price on any date other than November twenty-second. This was prejudicial, for concededly there was a rising market. Plaintiff's witness had stated that the market value on November twenty-second was fifteen cents a pound. While this was stated as a fact, it was in reality a conclusion, representing the opinion and judgment of the witness based upon his general knowledge of market conditions, for he admitted that he knew of no sales on that day. Ordinarily, where no sales can be shown on a particular day, it is necessary to have recourse to sales before and after the day within a reasonable range of time, in order to determine fair market value on the day in question. (*Dana* v. *Fiedler,* 12 N. Y. 40, 49.) To deny the defendant the opportunity to ascertain the soundness of the conclusion by the witness and test out his general accuracy and reliability by examining him as to the market immediately before and after the day in question rendered his testimony unassailable and unwarrantably curtailed the right of cross-examination. (*Wells* v. *Kelsey,* 37 N. Y. 143, 146.)

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.