OPINION OF THE COURT
Harold Hyman, J.
Plaintiff moves for leave to reargue its prior motion for summary judgment which had been denied by the court.
Upon re-examination of the papers and exhibits as to the prior motion, together with the affirmations and exhibits now submitted by the parties, the court finds that a novel question as to contractual construction and interpretation is involved, one which has not been definitely dealt with by the courts of this State or, at least, never sufficiently clarified.
Plaintiff, by its former attorney, commenced this action to recover for work, labor and materials furnished to defendant at an “agreed price” and reasonable value; it alleges partial payment ($1,000) with a balance of $12,800 due, *141 demanded, but unpaid. The defendant’s answer denies the material allegations of the complaint, but asserts no affirmative defense of any kind.
The parties have proceeded upon the primary motion by plaintiff for summary judgment as though this action was one for work and labor performed and materials furnished pursuant to a “written contract” between them dated October 21, 1977. They have also proceeded similarly on this present motion for reargument. They have thus chartered their own course in this litigation; the court will consider same accordingly, and thus will lend itself to the basic issue of interpreting the language used in the contract. The salient facts are, therefore, as follows:
On October 21,1977 the parties entered into said written agreement. The agreement states, in part:
“The defendant [General] Contractor has entered into a contract with Davidson Avenue Rehab Associates, hereinafter called the ‘Owner’, for the construction of Davidson Ave. Rehab, 2000, 2012, 2016, 2020 Davidson Avenue, Bronx, New York, hereinafter referred to as the ‘Project’, all in accordance with General Contract Documents which are on file in the office of the Contractor and have been examined by the Subcontractor, and which the parties do hereby expressly make part hereof with the same force and effect as if same were physically incorporated herein. The term ‘General Contract’, * * * shall, without limiting the generality thereof include * * * ‘Instructions to Bidders’, ‘Form of Contract’. ‘General Conditions * * * including any amendments’.
“Statement of Work 1. The Subcontractor agrees to furnish all the labor * * * material * * * for all of the roofing and sheetmetal work * * * as shown on the plans and specifications * * * 3. The sum to be paid by Contractor [defendant] to the Subcontractor [plaintiff] for the full and complete performance of said work shall be * * * $14,000 dollars subject to additions or deductions on account of alterations, additions or omissions in the work”.
On May 1, 1978 the parties supplemented the contract by a “Change Order * * * the contract fee is being increased by the amount of $900.00.” This “Change Order” therefore *142 increased the contract amount to $14,900, in accordance with plaintiff’s letter of February 21, 1977.
Apparently plaintiff caused its prior attorney (Stahl) to write to defendant on November 16, 1978 demanding payment of $15,000, to which defendant responded on November 22, 1978 indicating that the contract and change order totaled only $14,900 of which $1,100 had been paid leaving a balance of $13,800; but, said letter also stated, “Please be advised that Colonial Roofing [plaintiff] still has outstanding work to perform”.
Thereafter, 12 days later, on December 4,1978, defendant again wrote to plaintiff’s attorney (Stahl) enclosing $1,100 “to be credited against the outstanding account” (of plaintiff), and further stating therein, that, “we will forward * * * $5,210.00 by December 14,1978, and * * * $6,210.00 by December 30,1978. The retainage amount of $1,380.00 will be forwarded when we receive final payment from F.H.A. This will bring the grand total that is due to $13,800.00.” (Emphasis added.)
It is to be noted that the latter verbiage used by defendant specifically was, “the grand total that is due to $13,800.00.” No claim was made by defendant in that last writing as to any “outstanding unperformed work” required by plaintiff to be done before its entitlement to full payment less retainage.
Upon the primary motion, defendant’s officer, Herbert A. Sylvester, argued in his affidavit in opposition, that the first letter of November 22, 1978 calls to plaintiff’s attention “outstanding work” to be performed by plaintiff; but, it is to be further noted that such conclusion of there being outstanding work unperformed by plaintiff and what such unfinished work consisted of is not stated in its final letter of December 4, 1978 nor is any such “unperformed work” set forth in his opposing affidavit. As a matter of proof of such conclusory statement the opposing affidavit of defendant is completely devoid thereof. To the contrary, the defendant’s officer states in his affidavit as follows: “I specifically affirm that funds have not yet been paid to defendant by the owner for the work upon which plaintiff now claims, although that ‘closing’ and that funding are now anticipated *143 to occur in the next few weeks. (In fact, the defendant is no longer on the job and the owner may even now have said funds available to distribute to plaintiff)”. (Emphasis added.) The law is well settled that on a motion for, or in opposition to a motion for summary judgment, a party must lay bare facts in proof thereof to indicate that it has a good and meritorious cause of action or defense, and that there does exist a triable or at least a substantial arguable question of fact which merits a trial (Banasik v Reed Prentice Div. Package Mach. Co., 34 AD2d 746). Certainly the •affirmation of the attorney for defendant, consisting solely of argument by one without personal knowledge of the facts, cannot be considered with respect to the merits of any alleged “unfinished work”, it being nothing more than hearsay (Horowitz v Kevah Konner, Inc., 67 AD2d 38; Bank Leumi Trust Co. of N. Y. v Collins Sales Serv., 65 AD2d 735; Homart Dev. Co. v Graybar Elec. Co., 63 AD2d 727; Pathmark Graphics v J. M. Fields, Inc., 53 AD2d 531).
On the other hand, it appears that the affidavit by defendant’s officer raises the only issue, that is, whether the plaintiff subcontractor must await its payment until the defendant general contractor has received its payment from the “Owner” (Davidson). This issue revolves around interpretation of the following contractual language: “payment : * * * 3. Monthly, as the work progresses, an amount equal to 90 % of the value of the work completed from month to month, provided, however, that the Owner shall theretofore have paid the Contractor on account of such work completed”. (Emphasis added.)
It is to be noted that, at least by December 4,1978, plaintiff had completed its work and defendant had agreed to make payment to plaintiff for “the grand total that is due to $13,800.00”; no condition of any kind for any reason was stated or made by defendant to making payment to plaintiff. Now, however, some 21 months later, defendant asserts a so-called condition precedent to its requirement to making payment, contained in the contract as aforestated, and allegedly reflected by the terminology, “provided, however, that the Owner shall theretofore have paid the Contractor on account of such work completed”.
*144 Assuming that defendant has as yet (21 months later) not been paid by the owner, the question is whether the risks and hazards of payment by the owner to the general contractor (defendant) should be borne by the subcontractor (plaintiff) ? In the opinion of this court, the answer must be no!
In Shuler-Hass Elec. Corp. v Aetna Cas. & Sur. Co. (49 AD2d 60, affd 40 NY2d 883), defendant Aetna had issued a payment bond on behalf of the general contractor for the benefit of the subcontractors. Plaintiff subcontractor brought suit on the bond and Aetna defended on the basis of a subcontract provision similar to the “payments” section subject to dispute herein. As in the instant case, defendant argued that since the owner had not paid the general contractor, the subcontractor’s right to payment had not yet matured. The Appellate Division, in reversing Special Term’s order denying plaintiff’s motion for summary judgment, held (49 AD2d, supra, at pp 64-66):
“In the absence of a clear expression in the contract papers that the credit risk of the general contractor and the delay in payment frequently attending on construction projects are meant to be shifted to such suppliers and subcontractors, the contract instruments should not be construed as intending such assumption (Dyer Co. v Bishop Int. Eng. Co., 303 F2d 665 [6th Cir., 1962]). Indeed, it is presumed that the parties did not intend that payment of the small subcontractors should await the determination of an extended legal dispute between the owner and general contractor over an issue not concerning him or his work (Eastern Heavy Constructors v Fox, 231 Md 15, 19-20 [1963]). * * *
“Courts in other jurisdictions * * * have held that the clauses * * * which provide that the contractor shall pay his subcontractors within a stated number of days after the contractor has received payment from the owner, merely fix the time when payment is due and do not establish a condition precedent to payment (Howard-Green Elec. Co. v Chaney & James Const. Co. 12 NC App 63 [1971]; Wolfe Co. v Baltimore Contrs., 355 Mass 361 [1969]; Fishman Const. Co. v Hansen, 238 Md 418 [1965]; Dyer Co. v Bishop *145 Int. Eng. Co., 303 F2d 655, supra; Moore v Continental Cas. Co., 366 F Supp 954 [WD Okla, 1973]). * * *
“ ‘In the absence of a clear provision that payment to the subcontractor is to be directly contingent upon the receipt by the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after * * * completion of the subcontractor’s work * * * so as to afford the general contractor an opportunity to obtain funds from the owner.’ [Emphasis added.] * * *
“In some cases where the contract has not specified the time of payment the courts have held that payment is due to plaintiff within a reasonable time after completion of the work and demand for payment (Blyer v Great Amer. Ins. Co., 395 F2d 273, supra).” (See, also, Sturdy Concrete Corp. v NAB Constr. Corp., 65 AD2d 262; Kalwall Corp. v Capolino Design & Renovation, 54 AD2d 941.)
In Public Improvements v Parker Constr. Corp. (59 AD2d 671), a provision contained in a written contract between general contractor and electrical subcontractor that “ ‘The hold back will be paid on completion of the job and upon approval by all agencies, including New York State Division of Housing and Community Renewal, and will not be unduly withheld’ ” was not construed by the Appellate Division as establishing a condition precedent to payment for electrical work performed by subcontractor.
In Yamanishi v Bleily & Collishaw (29 Cal App 3d 457), the written contract provided that, defendant contractor agreed “to pay to the subcontractor (plaintiff) upon receipt of each payment received from the owner the portion of said payment allowed to contractor on account of subcontractor’s work, to the extent of subcontractor’s interest therein less any percentage retained hereunder.” Overruling the trial court’s conclusion that plaintiff was not entitled to recover amounts sought until the happening of the condition precedent of payment to the contractor, the Court of Appeals (supra, p 462) upheld plaintiffs contention that a reasonable interpretation of the provision “would indicate * * * a purpose to assure the subcontractor *146 that funds received by the contractor would not be diverted by it, but would instead be timely and faithfully applied toward the subcontract. No other provision being made for time of payment, it would follow that in any event the subcontractor would be paid upon his performance or within a reasonable time thereafter” (Emphasis added.)
In Mignot v Parkhill (237 Ore 450, 455), the subcontractor sued for payment under a written contract which provided: “It is fully understood by and between the parties hereto that Contractor [defendant] shall not be obligated to pay Subcontractor [plaintiff] for any of the work until such time as Contractor has himself received the money from [the owner].” The court therein concluded that this provision did not evidence a condition precedent to payment, referring to a similarly based case, Crass v Scruggs & Co. (115 Ala 258, 265) in which the question, whether it could “be reasonably supposed it was contemplated, that the plaintiffs would devote their time, labor and means to the work, they were bound to complete within a particular period, without an absolute engagement from the defendant to pay them?”, was answered in the negative.
It is clear, particularly with regard to construction contracts where there usually is more than one class of subcontractors (roofing, plumbing, masonry, electric, or the like), that in the normal and regular dealings between a general contractor and its various subcontractors, if payment by the owner to the general contractor is to be deemed a “condition precedent” to payment by the general contractor to subcontractor, then each subcontractor would be assuming the risk of performance by other subcontractors in other fields of construction as well as performance by the general contractor; for example, possible unwarranted prolonged delay, possible insolvency of the owner, and possible insolvency of the general contractor resulting from its having entered into or incurred inordinate contractual obligations in attempting performance of its general contract. Therefore, only a specific and clearly unqualified assumption of such risks, evidenced by written documentation, should require a determination that a “condition precedent” to payment legally exists. This is so *147 because the construction of an agreement that results in placing one party at the mercy of the other must be avoided if possible (Getter v Tow, 261 App Div 773; Price v Spielman Motor Sales Co., 261 App Div 626; Reliable Press v Bustol Carpet Cleaning Co., 261 App Div 256), because every contract implies good faith and fair dealing (O’Neil Supply Co. v Petroleum Heat & Power Co., 280 NY 50) and that neither party shall do anything which will destroy nor injure the other party’s right to receive the fruits of the contract (Kirk La Shello Co. v Armstrong Co., 263 NY 79), and, “Where, from the contract, it appears that a stipulation for payment on receipt of a specific fund, or a provision indicating the source from which a fund for payment or performance is to be procured, is inserted merely for the purpose of fixing the time at which performance shall become due, such stipulations will not be regarded as evidencing conditions precedent, but performance may be demanded within a reasonable time after the fund should have been realized or the contingency from which it is to be secured should have happened.” (17A CJS, Contracts, § 456, p 583; emphasis added.)
. On the question of “reasonable time” it is hornbook law that, “Although it has been said that, where there is no dispute as to the facts, the question of reasonable time is one of law to be decided by the court (Roth v Buffalo & State Line R.R. Co., 34 N.Y. 548, 552, 90 Am. Dec. 736; Levant American Commercial Co., Inc. v. Wells & Co., Inc., 186 App. Div. 497, 174 N.Y.S. 303), the weight of authority in New York holds that what is reasonable time is generally a question of fact for the jury, to be decided in the light of the circumstances of the case, and that only in cases where but one inference can reasonable be drawn from the evidence does reasonable time become a question of law for the court to decide. (Greacen v. Poehlman, 191 N.Y. 493, 498, 84 N.E. 390; Gerstenblith v. Meyer, 191 N.Y.S. 1.)” (Richardson, Evidence [6th ed, 1944], § 197.) Here, where the facts are undisputed and but one inference can be drawn from all the available evidence before the court, this question is considered to be one of law, resolvable in favor of the plaintiff subcontractor upon these facts and circumstances, also bearing in mind that the defendant’s *148 opposing papers are completely devoid of any contention or proof that the delay of 21 months in defendant’s receipt of payment from the owner was in any respect caused by plaintiff, and where the intent of the parties has been manifested by the parties, not only by their acts but by their own declarations as contained in defendant’s letter of December 4, 1978 (see Zimmermann v Roessler & Hasslacher Chem. Co., 246 Div 306, affd 272 NY 566).
Accordingly, plaintiff’s motion for reargument is granted and upon reargument the prior order is recalled and plaintiff’s motion for summary judgment is now granted against the defendant in the amount of $12,800, with interest thereon from December Ip, 1978, together with the costs and disbursements of the action to be taxed by the clerk.